## SUPREME   COURT.

FRANCIS H. MORAN, respondent, agt. WILLIAM MCCLEARNS, appellant.

Where the allegations of breaking and entering the close of plaintiff were clearly upon the face of the complaint mere surplusage, *held* that there was no error committed in so amending the complaint as to allow the true cause of action therein stated to remain.

An *overseer of highways* has no right in making repairs upon a highway within his district, in other respects suitable and proper, to change a *natural watercourse*, or the natural course of *surface water* drainage, so as to cast the water upon the lands of an owner abutting upon a highway where it had not been previously accustomed to flow, or to increase considerably in volume and quantity either, the waters in a natural watercourse or from surface drainage, flowing upon such land, to the injury of the owner thereof.

The public must construct and repair their way with reference to the rights of adjoining owners of lands.

*Fourth Department, June Term,* 1872.
*Present* JOHNSON, TALCOTT *and* BARKER, *Justices.*

Action commenced in justice court, July 9th, 1869. July 17th, 1869, parties appeared. Complaint—Trespass. Answer denied, and special matter. Cause tried July 26th, 1869. Judgment for plaintiff; damages, $149 ; costs, $13.80. August 6th, 1869, defendant appeals to county court for new trial. New trial had ; judgment for plaintiffs, damages, $150 ; costs, $111.33 ; February 18th, 1870. Appeal to general term from judgment. May 1st, 1871, new trial granted. November 2d, 1871, new trial had, and judgment for plaintiff; damages, $51 ; costs, $330.71. December 22d, 1871, appeal to general term from order, denying motion for a new trial, and from the last judgment.

In June, 1869, defendant, in disobedience of the instruc-

tions of commissioners of highways of the town of Onon-daga, (not controverted in the bill,) dug a ditch along the west side of the highway, adjoining plaintiff's premises in said town, from, and opened a sluice at, school house, (noted on map which forms a part of this bill), and closed another sluice-way leading from said school, house across the N. and S. road, and down the E. and W. or cross-road, which, from since 1860 or 1861, conveyed the waters draining and springing from the hills S. and S. W. of said school house, on to defendant's farm at a point noted on said map, commingling waters accumulating below the sluice near to a butternut tree, (also noted,) with a large volume of water accumulating above said sluice, which latter water had from time immemorial up to·1860 or 1861, been accustomed to flow through natural channels or ravines upon defendant's farm, through said butternut tree sluice, was precipitated upon the plaintiff's meadow, by the de-fendant, causing the damages complained of.

That the cross-road sluice at school house was erected and maintained under directions of highway authorities of said town.

That the butternut sluice was closed at same time of erec-tion of said cross-road sluice in 1860 or 1861, which caused all the waters then to flow down said cross-road.

That the waters accumulating below or N. of butternut tree sluice prior to last-named erection were prescribed to run through plaintiff's meadow, but not in quantity sufficient to do any damage.

·That more water accumulated S. of butternut tree sluice than N. of or below it.

That the distance from school house through Moran sluice to point of discharge on to defendant's farm, is about three times that down the cross-road to same point, and a forced passage, while the latter is easy, expeditious and natural.

The washing of cross-road was capable of permanent repair.

Conflict of evidence on prescriptive right to flow waters above butternut tree sluice.

At folio 56½, jury charged in strict conformity with intimations of this court in 60 *Barb. R.*, 390.

Public had acquired right to turn waters below or N. of butternut tree.

Upon conflict, the question of prescription in public, to waters above or S. of butternut tree submitted to jury, (who found against defendant.)

That if public had such prescriptive right, our action could not be maintained.

Folio 64 limits plaintiff's recovery to damages caused by waters which public had no right to turn. The charge at folio 64, construed and understood by jury to mean butternut tree sluice instead of butternut tree.


LUDINGTON and GILLESPIE, *attorneys for plaintiff.*


I. Two questions only submitted to this court.

1st. Was there any error in allowing a proposed amendment of pleading not in form made?

2d. Was there error in charge at folios 62½, 63½, 64, or in refusing request at folios 68. 69 ?

II. Upon the first question, the 5th sub-division of §366 of Code, in express terms empowers the county court to allow such amendment.

1st. But such amendment was not essential; for all forms of action were abolished, and the complaint contained all facts necessary to maintain the action.

2d. *Quare clausam fregit* was the ancient form, because our close is just as effectually broken and entered by defendant's agent, the element of wrongful waters, as by a crowbar or pick-axe applied to our gateway.

3d. No amendment was in form made.

III. Does the office of overseer of highways confer upon

defendant in this case, rights, powers, immunities from action, an individual hath not?

We answer not; because

1st. At folio 38 the bill shows evidence not controverted; that defendant, as overseer, was directed by the commissioner of highways of said town not to do the act complained of.

2d. As matter of law, "all the powers of overseers must be taken to be subordinate to, and under the superior control of the orders of the commissioners, whom they are bound to obey." (*Bartlett* agt. *Crozier*, 17 *John's, R.*, 447.)

*a.* This case is not reversed or criticised, but followed and approved, up to the present time, by the court of appeals. (See *Wait's table of cases*, 37.) Hence the exceptions referred to assumed an official capacity in defendant to do this act, which the bill concedes did not exist officially, the act being interdicted by defendant's superior officers.

*b.* But suppose this was yet an open question, that there was conflict upon it, in evidence, then the request should have been qualified by making provisions for a finding whether the act was interdicted by competent authority.

Also as to whether the act was reasonable, necessary, and not an abuse of official discretion, if not interdicted by the commissioners. For a request to charge must be in such form that the court may charge in the very terms of the request without qualification. (*Carpenter* vs. *Stilwell*, 11 *N. Y.*, 79.)

*c.* The point here made is not that defendant, as overseer, was "not ordered" as put in this case in 60 *Barb.*, 391, but that he was ordered not to do the act complained of by the commissioners of highways. This must surely render his attempted justification abortive.

IV. As an officer, aside from the protest of the commissioners, he had no right to turn the waters above the butternut tree sluice upon us. (*Thompson on Highways*, 152;

*Cook on Highways,* 113 ; *Plummer* agt. *Sturtevant,* 32 *Maine,* 325.)

Nor can defendant excuse himself by saying (as is contemplated by his request), that some other party had increased the flow before he did the act complained of.

He cannot thus visit the sins of another upon this plaintiff. (*Note (a) Martin* agt. *Riddle,* 26 *Penn.,* 415.)

a. A road must be worked so as not to obstruct the natural flow of water. *(People* agt. *Kingman,* 24 *N. Y.;* 559.)

Conceding that there are many cases of constructing, grading, leveling and repairing highways by officers having lawful authority in the which an injury occurs from a reasonable exercise of such authority which are *damnum absque injuria.*

Yet the courts draw between those cases and this, a sharp, well-deffned line of distinction ; and we assert that no approved case can be found in this, or in any other state, or in England, which confers upon the pettiest officer of a town immunity from action, who diverts from their ancient natural channels either surface or living waters which have been accustomed to flow on his own land from time immemorial, and casts them upon his neighbor's land to his damage, upon any pretext. But the converse of this has been held in all countries almost as long as those channels have existed.

V. The defendant, as a private person, has no such right. (*Sam'l A. Foot et al,* agt. *Bronson et al,* 4 *Lansing,* 47.) Nor to divert waters, which he has a right to turn if commingled with waters he is not entitled to divert. (*Thomas* agt. *Kenyon,* 1 *Daly,* 132; *Bellows* agt. *Sackett,* 15 *Barb.,* 97 ; *Bellinger* agt. *N. Y. C. R. R.,* 23 *N. Y.,* 42 ; *Kauffman* agt. *Griesmer,* 26 *Penn.,* 407.)

Surface water shall follow natural channels same as living water. (*Kauffman* agt. *Griesmer, supra ; Miller* agt. *Laubach.* 47 *Penn.* 154.)

Therefore this judgment should be affirmed with costs.

Moran agt. McClearns.

*By the court*, JOHNSON, J.—There was no error in the county court in allowing the amendment to the extent that it was allowed, as it did not change the cause of action or alter it in any particular.

True the complaint before the justice did in terms charge the defendant with breaking and entering the plaintiff's close, but the facts which constitute the real cause of action were stated, and these showed that the injury was occasioned not by breaking and entering, but by opening a sluice in a highway and turning the waters in the ditch of said highway upon the plaintiff's land to his injury.

The allegation of breaking and entering were clearly upon the face of the complaint mere surplusage, and there was no error committed in so amending the complaint as to allow the true cause of action therein stated only to remain.

The cause of action was plainly what would have been formerly known as an action on the case, and it was tried as such, and no injury was done to the defendant by the amendment.

The question at issue, and which was tried, was whether an overseer of highways has the right in making repairs upon a highway within his district, in other respects suitable and proper, to change a natural watercourse, or the natural course of surface water drainage, so as to cast the water upon the lands of an owner, abutting upon a highway where it had not been previously accustomed to flow, or to increase considerably in volume and quantity either the waters in a natural watercourse or from surface drainage, flowing upon such land to the injury of the owner thereof.

We think it clear that the overseer has no such right, and hold the law so to be.

This results, we think, from the nature of the right of the public in a highway.

It is a mere right of passage over the soil, and although the public has the right to alter, shape and fashion its roadway in such a manner as to render it convenient, safe and

useful for the purposes of passage, still abutting and adjoining lands, outside of the way and not servient estates to this right of way so as to authorize the public through its officers to change a natural watercourse, or the natural course of surface waters in regard to such lands to the injury of the owners with impunity.

The public must construct and repair their way with reference to the rights of adjoining owners of lands.

The defendant, in his answer, justified the acts complained of upon the ground that he was overseer of the highway, and that such acts were necessary for the benefit of the highway.

The road was a north and south road, and the water flowed northward through the ditch on the west side.

The evidence showed and the court held that in 1862 the public had acquired by user a prescriptive right to have the water flow through this ditch from a point as far south as a certain butternut tree, and through the sluice which the defendants opened at the time in question upon the plaintiff's meadow where it flowed at the time complained of.

In 1862 a change was made by filling up the west ditch at a point between the sluice in question and the butternut tree, and another sluice made across the road at that point, which had the effect to turn all the water coming from the south to that point down the south ditch of an east and west road, which there intersected the north and south road.

The effect of this had been to make a deep gully on the south side of the east and west road, and to render the road unsafe and dangerous to travelers. To remedy this difficulty and to prevent further injury to the east and west road the defendant, as overseer, filled up the new sluice, cleaned out the west ditch on the north and south road, and restored it to the condition in which it was at that place prior to 1862.

He also reopened the sluice, which, it seems, had in the meantime become filled up or closed, so that the water in the

west ditch passed through and upon the plaintiff's land, as it had prior to 1862.

The court ruled and charged the jury, that if by this last change the defendant had only restored the west ditch and the sluice then reopened, to the same condition in which they were prior to 1862, and no water passed through and upon the plaintiff's land except what came into the ditch between the sluice through which the water passed and the butter-nut tree, the defendant's acts were justifiable, and the action could not be maintained.

There was evidence in the case tending to show, that prior to the time when the new sluice was made and the water turned down the south ditch of the east and west road, there was a sluice just above and south of the butternut tree across this north and south road, by means of which all the water coming through the west ditch south of the butternut tree was carried across the road and down through a natural depression in the surface of the land, upon lands owned by the defendant, and that this sluice was filled up about the time the ditch was filled up, at the intersection of the east and west road, and the sluice there made to carry the water into the ditch of the other road, the effect of which was to bring the water from a distance considerably further south than the butternut tree, and increased the volume and quantity of water in the west ditch at the point of the intersection of the east and west road and at the sluice, by which the water was carried upon the plaintiff's meadow.   It was claimed by the plaintiff and the evidence on his side tended to show that it was this increased volume and quantity of water which occasioned the injury, and that but for this increase no injury would have happened.   These facts were controverted by the defendant, who gave evidence tending to show that for more than twenty years prior to 1862 the water had flowed through the west ditch the same distance from the south, and that: no change had been made within that time by

which the quantity of water flowing through that ditch had been increased.

These disputed questions the court submitted to the jury, and charged that if the water from the same distance had flowed through the ditch for twenty years, the plaintiff could not recover, but if it had not, and the injury was occasioned by the increased volume of water from the longer distance, the plaintiff was entitled to recover such damages. The jury found in favor of the plaintiff. The defendant's counsel excepted to this part of the charge.

The charge, we think, was clearly right.

The defendant, doubtless in the discharge of his official duty as overseer, had the right to make such change as he might in the exercise of his judgment deem necessary, not only by way of repair of the road, but by way of preventing further injury, provided that in so doing he did not interfere with the rights of others.

He might for this purpose unquestionably restore the way as it was when the change was made in 1862, and the public to all the rights they then had which had not become forfeited.

But if he undertook to restore, he should have restored the way in all respects to the condition it was in at and prior to 1862, and the public to the rights it then had.

He had no right to leave the sluice, which would carry off water from the ditch to his own land, closed, and open the sluice which would carry the water which should rightfully pass to his own land upon the land of his neighbor. This the jury have found he has done.

The court properly refused to charge as requested by the defendant.

The substance of that request was that the defendant had the right to make the change for the benefit of the road if he acted in good faith, even if it had the effect to throw more water upon the plaintiff's land than had been carried there before, or than would have gone

Moran agt. McClearns.

there had the entire way been restored to its former condition.

This proposition, as we have undertaken to show, cannot be maintained.

It must be obvious to any one that an overseer of highways cannot by any act of his own either confer any new rights upon the public, or impose any new burdens upon individuals to their injury.

The judgment, we think, is right, and should be affirmed.