PETER TREMBLAY, Respondent, *v.* THE HARMONY MILLS, Appellant.

STREETS — MAINTENANCE OF LEADER FROM BUILDING DISCHARGING WATER UPON SIDEWALK WHEREBY ICE IS FORMED THEREON. A property owner who negligently maintains a leader from the roof of a building so as to discharge water on the sidewalk, by which ice is accumulated thereon and the walk rendered dangerous, is liable in damages to any person who is injured thereby.

*Tremblay* v. *Harmony Mills,* 57 App. Div. 630, affirmed.

(Argued June 16, 1902; decided June 27, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 15, 1901, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinions.

*John H. Gleason* and *John E. MacLean* for appellant. The case was not submitted to the jury with correct instructions as to the law, and this court has the right to review such error. (*McGuire* v. *Bell Telephone Co.,* 167 N. Y. 208.) The charge of the learned trial justice was erroneous, and such error is fairly presented by the defendant's exception. (*Moore* v. *Gadsden,* 87 N. Y. 84; *Wenzlick* v. *McCot-*

ter, 87 N. Y. 122; *Moore* v. *Gadsden*, 93 N. Y. 12; *Weston* v. *City of Troy*, 139 N. Y. 281.)

*Mark Cohn* and *John Scanlon* for respondent. The unanimous affirmance of the judgment by the Appellate Division precludes this court from reviewing any questions, except such as arise on the charge of the trial judge and exceptions to the admission or exclusion of evidence. (*Szuchy* v. *H. I. & C. Co.*, 150 N. Y. 219; *Reed* v. *McCord*, 160 N. Y. 330; *Cronin* v. *Lord*, 161 N. Y. 90; *Lamkin* v. *Palmer*, 164 N. Y. 201; *Griffin* v. *Manice*, 166 N. Y. 188; *McGuire* v. *B. T. Co.*, 167 N. Y. 208; *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 610.) The liability of the defendant is founded upon the fact that it negligently constructed and unlawfully maintained and used a conductor or water pipe and water spout on its building, which discharged water on the sidewalk, and which water was allowed to accumulate and freeze thereon, and created and formed an obstruction on the walk, rendering the same unsafe and dangerous to pedestrians. Such a condition of the sidewalk constitutes a nuisance. (*Haggerty* v. *Thomson*, 45 Hun, 398, 400; *Timlin* v. *Standard Oil Co.*, 54 Hun, 44; *McConnell* v. *Bostelmann*, 72 Hun, 238; *McGoldrick* v. *N. Y. C. & H. R. R. R. Co.*, 49 N. Y. S. R. 566; 142 N. Y. 640; *Thuringer* v. *N. Y. C. & H. R. R. R. Co.*, 82 Hun, 33; *Macauly* v. *Schneider*, 9 App. Div. 279; *Loois* v. *Eureka Club*, 37 App. Div. 628.) There was no error in the charge of the court. (*McConnell* v. *Bostelmann*, 72 Hun, 242.)

CULLEN, J. Assuming the sufficiency of the appellant's exception to raise the point, which may well be doubted, the question presented on this appeal is whether the trial court erred in instructing the jury that if the defendant was negligent in maintaining a leader from the roof of a building so as to discharge water on the sidewalk by which ice was accumulated thereon and the walk rendered dangerous, the plaintiff was entitled to recover. " At common law any act or

obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance " (Angell on Highways, § 223), and any party who sustains a private or peculiar injury therefrom may maintain an action to recover the damages sustained. (*Wakeman* v. *Wilbur*, 147 N. Y. 657.) This is unquestionably the general rule. That the jury could have found that the discharge of water and drippings from the leader in winter weather, when the water so discharged was liable to freeze and form ice, rendered the sidewalk dangerous and constituted an obstruction, and that the defendant was negligent in not carrying his leader under the sidewalk to the carriageway seems to me quite plain. To exonerate the defendant from liability it must establish one of two propositions : *First*, that it had the lawful right to discharge the water which it had collected on the roof of its building upon the highway regardless of the effect of that action upon the highway ; or, *second*, that because the municipality was liable to any one injured by the defective character of its highway, no action could be maintained against the abutting owner, though his act may have created the danger or defect. I think that neither proposition can be sustained. " Highways are public roads which every citizen has a right to use." (Angell on Highways, § 2.)  " The primary and dominant purpose of a street is for public passage, and any appropriation of it by legislative sanction to other objects must be deemed to be in subordination to this use, unless a contrary intent is clearly expressed." (*Hudson River Tel. Co.* v. *Watervliet T. & Ry. Co.*, 135 N. Y. 393.)  *A fortiori* the use of the highway without legislative sanction must be subordinate to the public right of safe passage. A highway is not laid out or maintained either as a drain or as a sewer. In urban districts the easement acquired by the public includes the right to lay sewers, water pipes and similar conveniences under the highway. But the highway itself remains devoted to its paramount purpose of public travel, and no action can be maintained against the municipality because it does not construct a sewer in a street. Nor can any right of

the appellant to discharge the water from the roof of its building be predicated of its ownership of the adjacent land. As between private owners, as long as one leaves his land in its natural condition he is not required to adopt measures to prevent the flowage of surface water from his premises on those of his neighbor. (*Vanderwiele* v. *Taylor*, 65 N. Y. 341.) But when he puts a structure on his land a contrary rule prevails, and he must take care of the rain or snow that falls thereon, except in case of extraordinary storms. (*Bellows* v. *Sackett*, 15 Barb. 96; *Jutte* v. *Hughes*, 67 N. Y. 267; *Davis* v. *Niagara Falls Tower Co.*, 171 N. Y. 336.) Even when such an owner erects no structure he cannot " collect the surface water into channels and discharge it upon the land of his neighbor to his injury. This is alike the rule of the civil and common law." (*Barkley* v. *Wilcox*, 86 N. Y. 140.) " He may consume it, but must not discharge it to the injury of others." (*Forbell* v. *City of New York*, 164 N. Y. 522.) The same principle obtains against the public authorities when they so grade a highway or construct a sewer as to collect water and discharge it to the injury of adjacent lands. (*Moran* v. *McClearns*, 63 Barb. 185; *Noonan* v. *City of Albany*, 79 N. Y. 470.) Why is not the converse of the proposition equally true? In the opinion of my brother, GRAY, it is said of municipal corporations: " They owe the duty to the public of preventing the accumulation of ice from house conductors, or leaders, overhanging, or near to the sidewalk." Surely the abutting owner cannot be authorized to do that which it is the duty of the municipal authorities to prevent.

The fact that the city may have been liable to the plaintiff did not relieve the defendant from liability if the negligent or wrongful act of the latter created the dangerous condition of the highway. On the city there rested the duty of maintaining its streets reasonably safe for the passage of travelers. So far as the street may become unsafe from natural causes that obligation is solely on the city, and even if an ordinance imposes upon the abutting owners the duty of removing snow

from the sidewalk, an action will not lie by a third party against an abutter for failure to comply with the ordinance. (*City of Rochester* v. *Campbell,* 123 N. Y. 405.) In the case cited the snow which caused the injury had fallen upon the sidewalk and the abutter had not contributed to its presence there. The doctrine of the case has no application where the affirmative act of the abutter creates the obstruction. On the contrary, " when corporations have been compelled to pay damages for a wrongful act perpetrated by another in public highways, they become entitled to maintain an action against such persons for indemnity from the liability which the wrongful act of the tort feasor has brought upon them." (Opinion of RUGER, Ch. J., citing authorities, same case.) It is contended that we are concluded by the decisions of this court in *Wenzlick* v. *McCotter* (87 N. Y. 122) and *Moore* v. *Gadsden* (87 N. Y. 84). We think they do not control the determination of the present case. In the *Wenzlick* case some broad statements were made by the learned judge writing the opinion which are in conflict with the views we have announced. These statements, however, were not necessary to the disposition of the case, and a careful reading of the opinion will show that the decision proceeded on the ground that the defendant had neither erected nor used the leader and that, therefore, he was not liable for the creation of a nuisance or for its continuance until he had been requested to abate it. In the *Moore* case the defendant had not changed the natural surface of his highway, from which it was alleged surface water or the drippings from melting snow had fallen on the sidewalk.

The judgment appealed from should be affirmed, with costs.

GRAY, J. (dissenting). The action was brought to recover for personal injuries sustained by the plaintiff from a fall upon an ice-covered sidewalk in front of the defendant's building. The complaint alleged the duty of the defendant to keep the sidewalk in a safe condition for travel ; that it had constructed a water pipe leading from the roof of its building, the spout of

which extended over the sidewalk; that it did "negligently, carelessly and unlawfully omit to erect a tunnel or raceway through, or underneath, said sidewalk to conduct the water off and from said sidewalk that flowed through said water pipe and spout and negligently omitted to exercise any care or take any means whatever to conduct said water from said sidewalk;" that it did "negligently, carelessly and unlawfully suffer and permit ice to form, accumulate and remain on said sidewalk, near said water spout, in an unfit, dangerous, unsafe and improper condition, and did, at the time,　*　*　*　· and for a long time prior thereto, negligently and unlawfully suffer and permit water to flow from said building through said water-pipe and spout on said sidewalk and accumulate and freeze thereon　*　*　*　rendering it exceedingly dangerous, unsafe and hazardous for travel." The answer admitted the ownership of the building and the erection of the pipe and spout; and denied that the latter extended over the sidewalk, or that the defendant was liable for the injuries. The defendant offered no evidence and, the case being submitted upon the plaintiff's evidence to the jury, the plaintiff had a verdict. From the unanimous affirmance by the Appellate Division, in the third department, of the judgment upon the verdict, an appeal by the defendant has been allowed to this court.

The question for our consideration arises upon the exception taken by the defendant to the charge of the trial judge upon the subject of its liability. A motion to dismiss the complaint upon the plaintiff's evidence had been denied and the trial judge, in instructing the jury, prior to the submission of the case, after adverting to what was the claim of the plaintiff, made the following remarks: "Now you can see very well that it was possible for the rains to have descended, for the snows to have melted and to have accumulated on the top of that roof, and come down through that leader to the sidewalk, and every drop of it run away into the gutter so far off from the street, leaving the sidewalk entirely clean and clear of any snow or of any ice or of anything that was dangerous. If that was the situation then the fact that the leader was maintained there is a

matter of no possible account to you, because it did not result in any damage to Tremblay. If, on the other hand, it had come down there and by degrees had piled up something in the way of ice that was dangerous, and in fact a nuisance there, then the reverse would be the situation. * * * If you find that the Harmony Mill maintained a pipe there which was negligence on their part, and this ice was in fact accumulated by reason of the water coming down out of that pipe and you find the other facts which I will state to you in a moment in favor of the plaintiff, then the plaintiff is entitled to recover." At the close of the charge, the defendant's counsel excepted " to that part of the charge in which the court said, if the defendant allowed this water to flow on this sidewalk from the pipe, and become dangerous or frozen, it was a nuisance — whatever was said on that subject. That the Harmony Mills was in any wise liable for the maintenance of this pipe upon the building in question, or for any discharge of water therefrom upon the sidewalk in question."

The building of the defendant was a tenement house, in a street of the city of Cohoes, and had been unoccupied for some months prior to the time of the accident. A conductor led from a gutter, along the front of the roof, down to a point near the ground; where a spout projected eleven inches from the building. It had been there eighteen years under the same conditions. The evidence fails to show that the spout, in fact, projected over the sidewalk itself. It was not alleged, nor did it appear, to have been negligently, or improperly, constructed and there was no proof that its maintenance was contrary to any municipal ordinance. On the day of the happening of the accident, in the month of December, there was an accumulation of ice upon the sidewalk; covering a large area and extending from where the spout had discharged its water to the curb line. The sidewalk was flagged and was graded down towards the curb line. The conditions were, therefore, simply those, to put it the most strongly for the plaintiff, of a house owner having suffered ice to accumulate upon the sidewalk in front of its house, as the result of the

discharge of roof water through a conductor upon the sidewalk; where there was no defect in construction shown; but where the fault of the defendant, if any, was in its failure to provide some mode of carrying off the water and thus to make that part of the street less dangerous to passersby; of whom plaintiff happened to be one. The conditions cannot be unusual in the cities of the state. The trial judge, consistently with his denial of the motion to nonsuit the plaintiff, presented the case to the jury upon the theory, as to the defendant's negligence, in the passages cited, that liability might be predicated upon the maintenance of the water pipe, when its use caused, or brought about, a situation of danger to the traveler upon the sidewalk. I think that this was a mistaken view of the law and that the defendant's exception is available here to point out the error.

Municipal corporations are liable, as a general rule, for injuries caused by defective streets and sidewalks; because the control is vested in them and it is their duty to keep them in a reasonably safe condition. They owe the duty to the public of preventing the accumulation of ice from house conductors, or leaders, overhanging, or near to, the sidewalk. (*Todd* v. *City of Troy*, 61 N. Y. 506; *Allison* v. *Vil. of Middletown*, 101 ib. 667; *McGowan* v. *City of Boston*, 170 Mass. 384.) But, whatever our personal opinion might be upon the case, I think that we are concluded by authority and, unless we are going to lay down another rule of liability, than that which has received the sanction of this court, we must follow the case of *Wenzlick* v. *McCotter*, (87 N. Y. 122). The facts there were quite parallel with those of the present case. In that case, the defendant was the owner of a house in the city of Brooklyn. It was built in connection with the adjoining house and had a leader connected with the roof of the porch, which extended across the front of both houses. This leader ran down through the center of a column, between, and partly upon, both houses, until it reached the stoop. It then turned entirely on to defendant's premises, came through a hole in the baseboard of his stoop, and extended out on to the sidewalk in front of his house. This

leader had been there for twenty years and had originally been used to carry off the water from both houses; but, at the time of the accident in question, only the water from the adjoining house passed through it. The defendant, at the time of the accident, was not in possession of the premises, having leased them to a tenant. Upon a day in the month of December, in the evening, the plaintiff, while passing in front of the house, stepped on a mound of ice, formed from the water discharging from the mouth of this pipe on to the sidewalk, and, slipping, fell and broke her ankle, and for the injury thus occasioned the action was brought. Judgment was given for the plaintiff, on the ground that the conductor was a nuisance and defendant's liability the same as if the water had come from his own premises. DANFORTH, J., writing the opinion, said: "It is well to observe that the proof failed to sustain the averment of the complaint as regards the position and extent of the pipe upon the sidewalk. It did not reach the street, nor did it abridge the area of the walk. Nor does the decision below, or the contention of the respondent, rest upon that averment. Both stand upon the fact that it was the medium through which water was discharged thereon. I do not, however, find the law to be that a conductor pipe, designed to convey water from the roof to the ground, when constructed with due care and proper precaution, is in itself unlawful, so that it can be deemed a nuisance, even if its mouth is toward the walk, and it discharge upon it. * * * The water itself caused no injury; nor was the owner forbidden by any ordinance to relieve his roof in that manner. * * * As the care of streets and sidewalks is intrusted to the municipality, if they do not object to the discharge, I do not see how an individual can. Once upon the walk and there frozen and permitted to remain, it may subject the municipality to an action for omission of duty." In this opinion all the judges of this court concurred.

In *Moore* v. *Gadsden*, (87 N. Y. 84), the action was brought to recover damages for injuries caused by slipping and falling upon the sidewalk, in front of a vacant house of the defend-

ant's in the city of Brooklyn, where ice had accumulated and had not been removed. On the trial, it appeared that a portion of the ice was formed from snow melting in defendant's yard, and flowing thence onto the sidewalk; also that snow, which had fallen ten days before the accident, had not been cleared away, and that all the other walks in the same block had been cleared. DANFORTH, J., writing the opinion of the court, said: "The general doctrine is, that the public are entitled to the street or highway in the condition in which they placed it, and whoever renders the use hazardous, by placing anything upon it, is guilty of a nuisance. (*Congreve* v. *Smith*, 18 N. Y. 79.) The plaintiff's case is not within it. The sidewalk was constructed to receive the drip from the steps and yard, and so graded as to discharge itself into the gutter. If, by reason of obstruction, which it was the duty of the city or its officers to remove, it failed to do its office, the defendant cannot be made liable." The doctrine was reiterated, later, upon a second appeal in *Moore* v. *Gadsden*, (93 N. Y. 12).

I think the judgment should be reversed and that a new trial should be ordered, with costs to abide the event.

BARTLETT, MARTIN and VANN, JJ., concur with CULLEN, J.; PARKER, Ch, J., and O'BRIEN, J., concur with GRAY, J.

Judgment affirmed.