CHARLES WITTMAN, Respondent, *v.* THE CITY OF NEW YORK, Appellant.

*Negligence — opinion of a witness as to where water, which had frozen on the sidewalk, came from — recovery for the maintenance of a nuisance where the complaint alleges negligence in the care of a street — objection thereto in the first instance on appeal — amendment of the complaint.*

Where, in an action brought to recover damages for personal injuries sustained by the plaintiff by falling upon ice which had formed on the sidewalk of a street in the defendant city, adjacent to a fire engine house owned by such city, the principal issue litigated on the trial is whether the ice in question had formed from water dropping from an alleged defective leader attached to the engine house or whether it had formed from purely natural causes, it is error to allow the plaintiff, who concededly was not present when the ice was forming, to state, over the objection of the defendant, his opinion that the water from which the ice had been formed had come from the leader.

*Semble,* that where the complaint in such an action bases the defendant's liability solely upon the alleged negligent performance by the defendant of its duty to maintain the streets in a reasonably safe condition and not upon the ground that the defendant was, in its capacity as an abutting property owner, guilty of maintaining a nuisance in that it maintained upon the engine house a leader which discharged water upon the sidewalk, a recovery cannot be had against the defendant based upon the latter theory.

*Semble*, that the court would not have power to amend the complaint upon the trial so as to charge the defendant with liability upon the theory that it maintained a nuisance.

*Quære*, whether the objection that the complaint would not sustain a recovery upon the theory of a nuisance could be taken for the first time upon an appeal from a judgment rendered in favor of the plaintiff.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 19th day of June, 1902, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 2d day of July, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Theodore Connoly*, for the appellant.

*Franklin Pierce*, for the respondent.

INGRAHAM, J.:

The plaintiff was injured by slipping upon ice on the sidewalk of Fifth street between First and Second avenues. The complaint alleges that the defendant is a municipal corporation; that among the duties imposed by law upon the defendant is that of maintaining and keeping the streets, sidewalks, avenues and highways within the said city safe for travel by the citizens of said city and the traveling public generally; that Fifth street is a public street in the city of New York; that on the 2d day of January, 1899, the plaintiff, while carefully walking and traveling on the south sidewalk of said Fifth street in front of the premises used as an engine house and occupied by Engine Company No. 25 of the New York fire department, without any fault or negligence on his part, slipped and fell upon said sidewalk, and upon the water and ice which then and there covered said sidewalk; that the sidewalk where such injuries were received as aforesaid was at the time of such injury in a dangerous and unsafe condition for pedestrians, and was and had been maintained by the defendant in such dangerous and unsafe condition for a long time prior to the happening of said injury, and upon said sidewalk defendant had long maintained a continued accumulation of ice and water, of all of which said defendant and its officers having charge of said street had knowledge and notice, and said injuries were brought about in consequence of said unsafe condition and

continued accumulation and maintenance; that on the 2d day of January, 1899, the premises described as an engine house were, and for a considerable period of time prior thereto had been, used and maintained by the defendant, and that on said day the premises immediately east of said engine house and adjoining said engine house was on said date and for a considerable period of time prior thereto had been used and maintained by the defendant as a precinct station house; that said injury was caused by the neglect of duty and negligence of the defendant and its officers having charge and supervision of said street.

The answer in substance denies all of the allegations of the complaint, except the incorporation of the defendant and the presentation of the claim to the comptroller and to the corporation counsel. Upon the trial the plaintiff testified that at about three o'clock in the afternoon of January 2, 1899, he started to walk down Fifth street from Second to First avenue; that when he got to the fire house in front of the first door he slipped and fell and broke his leg; that the engine house in front of which he fell was a double house with two entrances, thirty-five or forty feet in width; that there was ice upon the sidewalk in front of the gutter on the fire house; that the flagging had settled and the water had formed in a depression and frozen; that he fell at a place where the flags had settled.; that the flagging had settled about three-fourths of an inch and the water had gathered at that point; that the extent of the ice was a foot and a half or so square; that he had found this sidewalk in the condition described in the winter time for two or three winters back; that on December thirty-first, two days prior to the accident, it had rained very hard. Upon cross-examination, he testified that he noticed that the leader was in a leaky condition for a couple of winters before the accident; that he noticed that it was in a leaky condition a few days before the accident; that once that winter he had noticed it; that he knew that the leak was there; that when he saw ice at the time on the sidewalk he knew that it came from the leader more or less, and that the ice upon which he fell was new ice.

Green, a companion of the plaintiff at the time of the accident, testified that the plaintiff fell in front of the engine house door; that he fell five or six feet from the leader; that the leader had frozen and burst, and the water ran from the leader onto the

sidewalk and spread east and west and flowed down to the flag that had settled more than the rest; and that the plaintiff fell upon this ice; that this depression was about an inch. Another witness testified that he saw the plaintiff fall; that he fell about six or seven feet from the leader; that he had noticed the condition of the leader prior to the time of the accident for a year or so; that before the 2d of January, 1899, he noticed that in cold weather, or after a rain, there was ice all the way down the leader and on the sidewalk, extending about six or seven feet; that at times it would go to the curb; that he saw ice there four times before January 2, 1899. Another witness testified that he saw the plaintiff fall about five feet from the westerly end of the fire house; that there was ice on different parts of the sidewalk, and just where the plaintiff fell there was a big piece of ice; that there was ice all about the wall of the fire house out to the sidewalk so that from the side of the fire house out to the place where the plaintiff fell there was continuous ice in frozen places. One of the firemen who occupied this fire house testified that for two years and ten months prior to the 2d of January, 1899, this leader was out of order; that it would freeze, and on a warm day it would thaw out, and that water would flow over the leader, down the leader; that this water came from the top and went down the leader, and would run off on the sidewalk. This was substantially the evidence for the plaintiff in relation to the condition of the sidewalk.

On behalf of the defendant it was proved, without contradiction, that it commenced raining on the 31st day of December, 1898, and continued until five P. M., when it changed to snow, and this snow continued until half-past seven of the morning of January first; that during this period the temperature rapidly fell, so that on the first of January the mean temperature was twelve and eight-tenths degrees; that it was below freezing from the time it stopped snowing on the first of January, all through the second of January; that the highest temperature on the second of January was eight degrees, at ten P. M.; that it was clear from the time it stopped snowing on the first of January all through the second of January, and during all that time the temperature was considerably below the freezing point. It was further proved that the leader upon this engine house had been out of repair in November and December, 1898; that on

the first of December the foreman of the engine house reported to the superintendent of buildings that a new galvanized iron leader on the front of the engine house was required to replace the old one, worn out and broken; that on December 8, 1898, an order was given by the superintendent of buildings to furnish this engine house with a new leader, with direction to the contractor to proceed with the work at once; that this work was completed before the 20th of December, 1898, when a bill for this new leader was rendered to the fire department, and on December 24, 1898, the foreman of the engine company certified to the building department that this work had been satisfactorily performed, and this foreman testified that at the time he forwarded the report, dated December 24, 1898, the work had been completed; that after the new leader had been put up it did not leak; that at this point the grade of the street is to the east, so that water from the leader would flow towards First avenue, and the plaintiff's testimony shows that the point where the plaintiff fell was west of the leader. There is no evidence that this particular ice upon which the plaintiff fell had been formed before the 1st of January, 1898.

It would appear that this leader ran from the gutter on the top of the building down in front of the building underneath the sidewalk, so that as constructed it would carry the water clear of the sidewalk. There was evidence that for a period prior to the accident this leader had been out of order, so that at times the water, instead of flowing through it, and being carried under the sidewalk, would flow outside over the sidewalk, and that at several times, while this condition existed, ice would form upon the sidewalk. The evidence, however, is quite conclusive that this defective leader had been removed and a new leader substituted in December prior to the accident, so that at the time this rain commenced, on the 31st day of December, 1898, the leader was in good condition. It also appeared that the heavy rain continued on the night of December 31, 1898, and the morning of the 1st of January, 1899, with the sudden violent fall of temperature, would account for the ice on the sidewalk. It is not an uncommon occurrence where there is a heavy rain which changes to snow, accompanied by a sudden fall in the temperature, that snow blocks up a leader which is in good condition, so that the water from the roof of the house overflows the gutter, flows down on the front

of the building upon the sidewalk and there freezes; and the existence of the ice on this sidewalk is amply accounted for by the weather conditions that existed. That under such circumstances there would be ice on the front of the building, on the outside of the leader and on the sidewalk, was to be expected, and for this condition it is quite evident that neither the city nor the abutting owner would be responsible. Considering the evidence as a whole in this case I think the finding that the proximate cause of the existence of this ice upon the sidewalk was the improper condition of this leader was against the weight of evidence. Upon the whole proof there can be no serious doubt but that the new leader was installed before the thirty-first of December when this storm commenced, and there is no evidence to show that this new leader was insufficient or would fail to carry the water from the roof of the engine house under the sidewalk under ordinary conditions; that there is certainly no evidence to justify a finding, in view of the character of the storm on the 31st day of December, 1898, and the 1st of January, 1899, and the temperature on the first and second of January, that the snow and ice on the sidewalk on January second was caused by a defective leader.

The cause of the action as set up in the complaint is based upon the negligence of the defendant in the performance of a duty imposed upon it as a municipal corporation to maintain the streets in a reasonably safe condition for public use. The complaint does not allege that the municipal corporation, as the owner of the engine house in front of which the plaintiff fell, had failed to provide proper leaders to carry off the water from that house, or that the condition of the ice upon the sidewalk had any relation to the ownership by the city of this engine house. This cause of action is entirely distinct from one against an abutting property owner for maintaining a leader or water pipe which discharged water upon the sidewalk. This latter cause of action is illustrated by the case of *Tremblay* v. *Harmony Mills* (171 N. Y. 598). Judge CULLEN, in delivering the opinion of the court in that case, states that the question presented was whether the trial court erred in instructing the jury that if the defendant was negligent in maintaining a leader from the roof of a building so as to discharge water on the sidewalk by which ice was accumulated thereon, and the walk rendered

dangerous, the plaintiff was entitled to recover.  It was proved that the leader was so constructed that it discharged the water directly over the sidewalk, and a judgment in favor of the plaintiff was sustained by a majority of the court upon the ground that any obstruction upon a highway which is maintained by a private person is a nuisance and any party who sustains a pecuniary injury therefrom may maintain an action to recover the damages sustained.  There the cause of action was not for negligence, but for maintaining a nuisance; and that any one maintaining such a nuisance was liable, irrespective of negligence, is clear.  No such cause of action is here pleaded.

There was in the complaint in this action no allegation of an unauthorized or improper construction on the abutting property, but the sole right to recover is based upon the negligence of the city in not performing the duty imposed upon it by law in maintaining the streets and highways in a safe condition for pedestrians.  The learned trial court instructed the jury that the city was not liable upon the cause of action stated in the complaint, but left it to the jury to say whether or not the city had maintained a defective leader which discharged the water upon the sidewalk and that in consequence thereof ice was formed upon the sidewalk upon which the plaintiff fell and sustained injury.  The court charged the jury : " Now, unless you find that the defendant caused the ice to form in the sidewalk by artificial means, that is, a defective leader as distinguished from natural causes, the city is not liable.   *   *   *   But in order to recover, the plaintiff must establish to your satisfaction by a fair preponderance of evidence that the accident was due to the formation of ice on the sidewalk in front of the engine house in consequence of water flowing there from a defective leader attached to such engine house ; " that after the case had been submitted, the jury asked the court, " Is ice which has formed on a defective sidewalk from natural causes considered artificial ice ?   Or, in other words, does a defective sidewalk, *per se*, contribute to what is called artificial ice ? "  To which the court answered, " No."  The jury then asked, " Is the city liable for accidents arising from ice which has formed on a defective sidewalk and allowed to remain there two days without anything being done to remove it or anything being done to prevent accidents ? "  To which the court

answered, "No." Thus, upon the only cause of action alleged in the complaint, the court expressly instructed the jury that the plaintiff was not entitled to recover. There was, however, no exception taken to the charge, nor did the defendant object to any of the testimony offered as to the condition of this leader upon the ground that the testimony was not competent under the pleadings; and it is quite doubtful whether the question is raised. If the question had been raised it is quite evident that it would be fatal to a recovery by the plaintiff. The court would not have had the power to amend the complaint upon the trial so as to change the cause of action from one based upon negligence of the defendant in the performance of its duty as a municipal corporation to a cause of action based upon the city's maintaining a nuisance upon the abutting property. But neither in the objection to the introduction of evidence, nor in the motion to dismiss at the close of the plaintiff's case, or at the close of the whole case, nor by any request to charge, or exception to the charge, did the defendant insist that the cause of action as alleged was entirely unproved, and that for that reason the defendant was entitled to a dismissal of the complaint or to a direction of a verdict. It is, however, unnecessary to determine whether we should reverse the judgment upon this ground, as we think that the finding that the defendant maintained on its premises a leader that was out of repair at or immediately prior to the accident, or that the ice formed from water that came from this leader was that upon which plaintiff fell was against the weight of evidence.

There is an exception to a ruling upon evidence which we think error and which necessitates a reversal of the judgment. Upon his direct examination the plaintiff was asked to "describe, generally, the condition of the ice outside of the place where you fell, all around?" and in answer had stated that "there had been a fall of water frozen; the frozen ice had gone down and seemed to run along and get right in this flag and formed there, and that left, as I say, about a foot and a half of ice." He was then asked, "Over what space had the ice spread?" That was objected to, the objection overruled, and the witness stated, "The water had come down from the leader." The defendant's counsel moved to strike that out, which was denied and to which the defendant excepted. The witness then continued: "It

came from the leader, and ice all along the leader, and up along, had been dropping, and the ice was on the side, and it seemed to run all along there, and just flowed away, and a skin of ice flowed down on the stone which was sunk." Counsel for the defendant then moved to strike out " what seemed to have happened or what had been done before." That motion was denied, to which the defendant excepted. I think this testimony was clearly incompetent. The witness does not pretend to have been present where the ice was formed, or that he saw the leader during the time that the water was flowing. It was incompetent for him to state his conclusion or opinion that the water that caused the ice upon the sidewalk had come from this leader, and the undisputed evidence was, as before stated, that the grade of the street was to the east where necessarily the water would flow if it came from the leader, while the ice upon which he fell was west of the leader. Whether or not the ice upon which the plaintiff fell was ice which was formed by water that came from this leader was, as the case was submitted to the jury, the crucial point in the case. One of plaintiff's witnesses had testified that plaintiff fell four or five feet from the hydrant, which was near the line of the building on the west of this engine house. Other witnesses fixed the place that he fell at six to eight feet from the leader. The testimony is undisputed that this leader was over twenty feet from the building on the west of the engine house, and the plaintiff, in testifying that the ice upon which he fell was formed by the freezing of water which came from this leader, was allowed to give his opinion upon the question that was to be determined by the jury. To permit that testimony to stand was, I think, error.

It follows that the judgment and order must be reversed and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN and LAUGHLIN, JJ., concurred.

VAN BRUNT, P. J. (concurring):

I concur in result. I do not think that there could be any recovery upon this complaint.

MCLAUGHLIN, J., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.