ALMA VENABLE, Appellant, *v.* THE CONSOLIDATED DRY GOODS COMPANY, Respondent.

Second Department, January 14, 1929.

*Edward K. Haas*, for the appellant.

*John E. Mack*, for the respondent.

CARSWELL, J. The action was for personal injuries. The complaint has two counts; one in nuisance, and one in negligence. The trial court put the defendant to its proof, but at the close of the entire case, over objection and exception, granted a motion of the defendant to compel the plaintiff to elect upon which count she desired to go to the jury. Plaintiff elected to go upon the nuisance count. Both parties then moved for a direction of a verdict. The court granted the defendant's motion and dismissed the complaint.

Upon this appeal the plaintiff insists (1) that there was a question of fact as to whether or not the defendant had maintained a nuisance; and (2) that it was error to require her to elect, in that there was also evidence upon which a finding of negligence could be based concurrent with or independent of a finding of nuisance. The essential facts are not in dispute.

For some years, and on February 11, 1924, the defendant conducted a dry goods establishment on the north side of Main street in Poughkeepsie. The building owned by it and so occupied included at least one story above the ground floor. Across the entire front of the store was a stone projection extending from the main front of the building about a foot. This projection had been there for several years. It was in the space between the upper part of the ground floor and the lower part of the floor above. Upon part of this stone projection the defendant had a large sign with the name " The Wallace Co." thereon. At either end of the

sign, and upon the extension of the same stone projection, there was maintained for several years an open-faced iron railing.

On February 10, 1924, a snow storm occurred, concluding before noon of that day, during which snow lodged on the projection behind the sign and behind the iron railing. The defendant did not remove this snow. It permitted the snow to remain there for about twenty-four hours before the accident involved herein occurred. At eight o'clock the following morning (February 11, 1924) the defendant's janitor removed the snow from the sidewalk. The temperature following the snow storm of February tenth, and prior to the happening of the accident herein, was such that the snow upon the stone projection behind the sign and the railing above the ground floor of the defendant melted under the action of the sun and formed icicles which hung from the projection, dropped to the sidewalk and froze thereon. Some of the melted snow flowed from the same places down the face of the building and froze upon striking the sidewalk. By these two means, ridges or mounds formed upon the sidewalk under the projection and in front of the westerly entrance to the defendant's store. They were allowed to remain, with no covering of salt or gravel. The janitor testified that although employed for three years prior to February 11, 1924, he had been instructed but once during those three winters to remove the snow from the stone projection and from behind the sign, and upon which occasion he removed it. The direction had been given to him by a former manager of the store. It appears that the man who had been the manager for more than a year before February 11, 1924, had never directed the janitor to remove the snow from the stone projection and from behind the sign and iron railing. The janitor admitted he had seen and he knew that the snow accumulated behind the sign and railing during snow storms.

At about eleven-forty-five A. M. on February 11, 1924, the plaintiff, a customer of the defendant, emerged from the store by the westerly exit, slipped on the ice thus formed and fell, sustaining a fracture of the ankle.

The foregoing presented a question of fact as to whether or not the defendant had maintained a nuisance. In *Walsh* v. *Mead* (8 Hun, 387) it was held that where a roof of a building was so constructed as to render the snow falling upon it likely to be precipitated upon the sidewalk, and it was so precipitated, the owner of the building was liable, on a theory of nuisance, to a pedestrian who was injured by the snow sliding from the roof upon him. That case was cited with approval in *Klepper* v. *Seymour House Corp.* (246 N. Y. 85, 91), where it was said: " The owner of

the building, whether the eaves did or did not actually project over the sidewalk, had no more right to collect snow and ice on such a structure and discharge it into the street than he would have had to shovel it down by the hand of employees. The frequency with which this thing had happened during all the winters since the defendant was the owner of the property was sufficient to charge it with notice of the condition. In *Tremblay* v. *Harmony Mills* (171 N. Y. 598) an owner was held to be liable in damages for injuries caused to a passer-by who slipped on ice formed from water discharged from a leader connected with the roof. No right to discharge water from the roof of a building, it was said, can be predicated upon the ownership of the adjacent land. A roof so constructed as to collect snow and ice and discharge it upon passers-by in a public street necessarily imperils the safety of the public, and becomes a nuisance. Any act of an individual, though performed on his own soil, if it detracts from the safety of travelers is a nuisance. (*Walsh* v. *Mead*, 8 Hun, 387; *Beck* v. *Carter*, 68 N. Y. 283.) " To the same effect is *Hollenbeck* v. *St. Mark's Lutheran Church* (154 App. Div. 328).

This principle was applied in *McConnell* v. *Bostelmann* (72 Hun, 238) to an awning maintained over the street, from the roof of which water from melting snow and ice flowed into a gutter, at the end of which gutter, through short spouts, the water was thrown into the air and in turn was blown upon the highway and formed ice, to a pedestrian's injury.

The principle of these roof and awning cases is equally applicable to any other form of construction that precipitates snow or ice, or water from melting snow or ice which forms into ice when precipitated upon the sidewalk. If a roof, a leader, a form of inset upon the front of a building without proper drains, a sign or an awning without proper drains, does that, it is a question of fact whether or not the construction or fixture is a nuisance. It is true that sometimes the element of nuisance can be eliminated by the manner of maintenance. That which is a potential nuisance may by proper maintenance never become an actual nuisance. An inset upon the front of a building will not be a nuisance if the snow is removed seasonably, before it melts and drops on the sidewalk and freezes. The same is true with respect to a sign or iron railing from behind which the snow may be removed so as to prevent the form of construction taking on the character of a nuisance.

In *Uggla* v. *Brokaw* (117 App. Div. 586, 598) it was recognized that a structure or fixture upon a building might not be a nuisance or even likely to become dangerous and yet become a nuisance

by reason of negligence, either in its construction or *maintenance.* It was said in *McNulty* v. *Ludwig & Co.* (153 App. Div. 206, 213): " It is true that the gravamen or substantial cause of action here is not negligence, but nuisance. Nevertheless, such a structure may be lawful in itself, and yet become a nuisance through negligence in the maintenance or use of it. The existence of a nuisance in many, if not in most instances, presupposes negligence. These torts may be, and frequently are, coexisting, and practically inseparable; as, where the same acts or omissions constituting negligence give rise to a nuisance. (*Clifford* v. *Dam*, 81 N. Y. 52; *Lamming* v. *Galusha*, 135 id. 239; *Dunsbach* v. *Hollister*, 49 Hun, 352; affd., 132 N. Y. 602; *Uggla* v. *Brokaw, supra; Pitcher* v. *Lennon*, 16 Misc. 609.) "

The cases upon which the defendant relies have no application herein. *McAuley* v. *United Cigar Stores Co. of America, Inc.* (204 App. Div. 356) is one of them. There, a customer was injured by falling upon an accumulation of snow and ice at or just inside of the entrance to the defendant's store. There was no proof that the snow had been there long enough to afford a reasonable opportunity to remove it. It was not there by reason of any particular or peculiar character of construction maintained by the defendant. It was there merely by reason of its fall in the course of nature directly upon the entrance. It was not, as here, a situation of the snow falling upon a point in the upper part of the building in the course of nature and being held there by reason of the character of construction utilized by the defendant and then finding its way later upon the sidewalk in the form of melting snow, and becoming, twenty-four hours later, a frozen mass at a point where this snow did not fall originally.

Likewise, there is no merit in the defendant's claim of no liability because of the fact that the ice on the sidewalk was caused by the dripping of icicles formed upon the sign from snow behind it, due to natural causes. The ice never would have been upon the sidewalk from this particular snow but for the fact that it was held behind the sign and upon the stone ledge and behind the iron railing by reason of the defendant having maintained such a form of construction and having failed seasonably to remove the snow from behind and upon that character of construction, so as to avoid the dripping and freezing to the injury of the plaintiff. At least, a jury might so find.

Accordingly, the trial court erred in dismissing the complaint. It should have submitted the question to the jury on the theory of nuisance in order that the jury might decide as a fact whether the defendant's form of construction constituted a nuisance.

The trial court also erred in compelling the plaintiff to elect.

Under *McNulty* v. *Ludwig & Co.* (*supra*), it may well be that the jury might conclude that the construction, with respect to the sign, the ledge and the iron railing was not a nuisance, but that the defendant was negligent with respect to the maintaining of the condition, in that it negligently failed to remove the snow from behind the sign and iron railing and upon the stone ledge, and that that negligence is what caused the dangerous condition of a frozen ridge or mass of ice upon the sidewalk. The proof is not as precise as it might well be as to when the snow ceased falling on February tenth. It refers to the time as being about noon. The accident happened the next day at eleven-forty-five A. M. The defendant had removed the snow from the sidewalk at eight o'clock on the morning of the accident. It had on one prior occasion during the preceding three years removed the snow from behind the sign and iron railings. The courts have long recognized that there is a duty upon property owners in this climate, where snow falls, to remove it from portions of structures where by reason of the character of the structure the snow thereon is likely to be precipitated upon passers-by to their injury. This view would permit of a holding by a jury under the facts in the case at bar that the defendant was negligent in the manner in which it maintained the sign, railing and ledge, and that if they were maintained in a manner free from negligence they would not necessarily constitute a nuisance in connection with the fall of snow thereon. The measurement of time, then, with respect to the opportunity to remove the snow, would be from the time the defendant had a reasonable opportunity to remove it from the ledge and from behind the sign and iron railing. This would differ from a measurement of the time from the instant when the melted snow formed ice on the sidewalk on the morning following the snow fall.

It may be that on the prior trial the court's assumption that there was no showing of negligence was based upon the short time involved under the latter measurement. Such a view is not sound. Removing the snow within a reasonable time after it became lodged upon the projection and behind the sign and railing is the measure of duty. The defendant had the opportunity from early the preceding day to remove the snow.

The judgment and order should be reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.

LAZANSKY, P. J., YOUNG and SCUDDER, JJ., concur; RICH, J., dissents.

Judgment and order reversed upon the law and the facts, and a new trial granted, with costs to appellant to abide the event.