# CARVIN v. CITY OF ST. LOUIS et al.

### Division Two, July 3, 1899.

1. **Negligence: MUNICIPAL CORPORATION: DUTY TO PEDESTRIANS.** A municipal corporation is not an insurer of pedestrians upon its streets and sidewalks against accidents. But it is chargeable with accidents to them which result from its negligence to keep the streets and sidewalks in a reasonably safe condition.

2. ——: ——: ——: EVIDENCE. The mere fact that a person is injured by a fall upon a street occasioned by a defective sidewalk is no evidence of itself that the municipal corporation was negligent in keeping its streets in .repair.

3. ——: ——: ——: HIDDEN DEFECTS. Plaintiff was injured by falling through a water meter box situated in a sidewalk, and in her petition alleged that the meter cover was entirely without fastenings, and was loose, and liable to become displaced and removed, and the opening to be exposed; that dirt and debris had accumulated in the flanges and grooves, and under the cover, so that said cover was liable to slip and give way under the weight of plaintiff in walking across it. The evidence showed that the injury was occasioned by plaintiff stepping with her right foot upon the cover, and the sliding of the cover to one side, thereby letting her foot drop down in the hole. *Held,* that the defect was a hidden or latent one, and not open and notorious.

4. ——: ——: ——: ——: CONSTRUCTIVE NOTICE. Where the defect is hidden and the city had no actual notice of its existence, and the evidence fails to show that it had existed for a sufficient length of time to justify the assumption that by the exercise of ordinary care the city might have known of its existence, there is no such negligence as will justify a recovery for the injury resulting from the accident.

5. ——: MANUFACTURING COMPANY: DUTY TO PEDESTRIANS: NOTICE: EVIDENCE. But where said water meter has been constructed by a manufacturing company by permission of the city for its own exclusive use, no previous notice of its unsafe condition is required. But its duty is to keep the meter in a reasonably safe condition. And before the pedestrian can recover for injuries resulting from a fall into the meter box, he must show by substantial evidence that it was not in such condition.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN M. WOOD, Judge.

REVERSED AND REMANDED.

LUBKE & MUENCH for appellant Claes & Lehnbeuter Mfg. Co.

This defendant is in the same legal attitude with the city in reference to its non-liability for hidden or latent defects. This was not a contrivance in itself dangerous, and no attempt was made by respondent to prove it so. On the contrary, it is shown affirmatively that its construction is such that danger therefrom is most improbable. Under these circumstances the rules laid down by this court in Benjamin v. Street Ry., 133 Mo. 274, can not apply here, although even in that case, it is conceded that some notice to defendant is essential to a liability. See, also, Robert v. Powell, 52 N. Y. Sup. 918.

B. SCHNURMACHER and CHAS. CLAFLIN ALLEN for appellant City of St. Louis.

(1) A defect to put the city on notice must be open, obvious and palpable; proof of hidden or latent defects, which would not attract or arrest ordinary attention, is not sufficient. Dillon's Mun. Corps., sec. 1026; Franke v. St. Louis, 110 Mo. 539; Cooper v. Milwaukee, 3 Am. Neg. Rep. 304; Burns v. Bradford City, 137 Pa. St. 361; Otto Township v. Wolf, 106 Pa. St. 608; McClosky v. DuBois Borough, 40 Weekly Notes, 214. (2) Every defect or imperfection in the streets or sidewalks of a city is not actionable, nor is the city a warrantor of the safety of its streets, or insurer against accidents thereon. Dillon's Mun. Corps., sec. 1019; Elliott on Roads and Streets, 448; Shearman & Redf. on Neg., sec. 290; Craig v. Sedalia, 63 Mo. 417; Brown v. Glasgow, 57 Mo. 156; Cooper v. Milwaukee, 3 Am. Neg. Rep. 304. (3) The mere fact that the plaintiff was injured in the manner

charged, is not sufficient proof of negligence against the city. The court should have given instruction number 7, offered by this defendant, to the effect that if plaintiff was hurt in consequence of unavoidable accident or misadventure she could not recover. Henry v. Street Ry., 113 Mo. 537; Jones on Neg. of Mun. Corps., sec. 230.

GEORGE BULLOCK and A. R. TAYLOR for respondent.

(1) The contention that there was no evidence of a defective condition of the cover, that was discoverable by ordinary inspection, can not stand, if the witness Burch is to be credited. He did discover the defective condition "weeks before" the accident. Saw that it would spring up if he stepped on the corner; saw that the southwest corner was stuck up above the surface of the sidewalk one-half or three-eights of an inch. If this was so, certainly it showed a defective condition observable to ordinary inspection. It looks most reasonable that if the casual passerby would notice such defect, the city, by its officers charged with the duty of inspection, ought to have seen and repaired the defect. The general rule is that a city, by its agents charged with the duty of maintaining its streets, is bound to exercise ordinary care of inspection to ascertain the condition of its streets, and to exercise ordinary care to keep its streets and sidewalks reasonably safe for their use by persons exercising ordinary care; and for a neglect of this duty resulting in injury to a person using the street or sidewalk with ordinary care, the city is liable. Blake v. City, 40 Mo. 570; Bowie v. City, 51 Mo. 462; Bassett v. City, 53 Mo. 296; Welsh v. City, 73 Mo. 74; Roe v. City, 100 Mo. 193; Haniford v. City, 103 Mo. 181; Franke v. City, 110 Mo. 521; Flynn v. Neosho, 114 Mo. 572; Gerdes v. Christopher, 124 Mo. 354; Nixon v. Railroad, 141 Mo. 437. (a) The evidence of Burch and Pohlman tending to prove that the cover was out of order for weeks before the injury to the plaintiff, and the jury having by their verdict

so found, that fact must be taken as true in this court. James v. Mutual Reserve, 148 Mo. 1; Moore v. Ray, 73 Mo. 438; Bray v. Kremp, 113 Mo. 552; Etlinger v. Kahn, 134 Mo. 497. (b) This was no latent or hidden defect if the lid stuck up at the southwest corner, so that it sprung when stepped upon by a person as described by the witness, Burch. It was a defect open to the observation even to a passerby, and certainly should have been seen by a person whose duty it was to inspect. (c) If the facts were as found by the jury there was no element of unavoidable accident in the case. And it was no error to refuse the instruction because it was a pure abstraction. Meiners v. City, 130 Mo. 286.

BURGESS, J.—This is an action for damages in the amount of fifteen thousand dollars for personal injuries alleged to have been sustained by plaintiff on August 12, 1894, by falling into a water meter box on the south side of Washington avenue, city of St. Louis, about twenty feet east of the east line of Twenty-Second street, in front of the premises of the Claes & Lehnbeuter Manufacturing Company.

The petition alleges that at the time of the accident, and for some time previous thereto, the cover of the meter was without fastenings, was loose and liable to become displaced and removed, and the opening to become exposed by reason of the accumulation of dirt and debris in the flanges and under said cover. As to the city of St. Louis the petition alleges that by its proper officers in charge of keeping its streets and sidewalks in repair, it had notice, or by the exercise of ordinary care would have had notice of the dangerous condition of the covering of the water meter, before plaintiff received the injuries complained of, in time to have repaired the same and to have averted the injury. As to the manufacturing company the petition alleges that it was negligent in maintaining said cover in said defective condition. And that by

Vol. 151 mo—22

reason of said defective condition of said cover plaintiff on the 12th day of August, 1894, while passing over said sidewalk stepped upon said cover when it gave way and plaintiff's foot and leg fell into said opening, whereby she was greatly and permanently injured upon her leg, knee, hip and back, and sustained a great shock to her nervous system.

Defendants answered separately denying all allegations in the petition, and alleging contributory negligence on the part of plaintiff.

The case was tried to the court and jury.

There was a verdict in favor of plaintiff assessing her damage at $1,800 upon which judgment was rendered.

After unsuccessful motion by each of the defendants for a new trial, they prosecute separate appeals.

The manufacturing company on application to the defendant city, in June, 1891, was permitted to sink in the sidewalk, in front of its business establishment, a water meter for the purpose of measuring the consumption of city water in its factory. The meter is placed in a square box, and is covered with an iron lid, set in a square flange on a level with the surface of the pavement. This lid is about twenty inches square, is made of iron and weighs about forty-four pounds. The flange in which it rests is about one inch wide.

About two o'clock in the afternoon of the day of the accident plaintiff was walking along on the sidewalk on Washington avenue, near the southeast corner of said street and Twenty-Second street, when she stepped with her right foot upon the meter cover, which slipped, and her right foot and limb went into the opening, in consequence of which her limb was severely bruised, and her back injured.

She testified as a witness in her own behalf substantially as follows: Am 32 years old, and prior to August 12, 1894, was a dressmaker. Have resided in the city of St. Louis five years. On August 12, lived at 2206 Locust street, and was in good health. On August 12, 1894, I left my house and went

north on Twenty-Second street to Washington avenue in order to take the car going east on the avenue. Having reached Twenty-Second and Washington avenue I crossed Twenty-Second street and went over to the southeast corner of Washington avenue and Twenty-Second street, and a car having just passed, I knew I would have to wait a minute or two; therefore I started down the pavement to wait for the car, "but before I reached the pavement I stepped on this flange, which slid out and I fell." When I say the flange, I mean the water meter cover, which was a square piece of iron about 18 or 20 inches in size. When I stepped on it it slid down; that is, it slipped off, towards the west. I fell into the hole as far as I could go with one limb; I mean the hole where the cover had been. As near as I can say the cover was 18 inches square, and it was my right limb that went into the hole. As I fell I struck my back against the edge of the iron; the lid or cover slipped entirely off. The sidewalk there is paved with stone or granitoid, and has a smooth surface. I can not say whether I stepped on the flange or against it; I think I stepped on the edge of the iron. I know the covering was there, and I never noticed it was in a dangerous condition. The sidewalk of which I have been speaking is the sidewalk on Washington avenue, which is, and at that time was, a public street. When my limb went down I fell a little towards the right, the east of the covering. It was the right side of my back which came into contact with the iron. My knee was badly bruised and skinned, also my back and hip, just above the hip between the back. The back was hurt a little to the right of the center. I was helped up by a gentleman who crossed the street, but I was able to walk, and when the car came I took it and then returned home. The next morning Dr. Edmunds called on me; that evening of the accident I had no surgeon. The accident happened about two o'clock in the afternoon; the day was bright and warm. I was at home in less than an hour thereafter. I did not feel

badly until the next morning, or rather late the next night. I was compelled to go to bed, and was in bed six weeks. After that I could move around the room with crutches, but could not go out of the house. I have not been able to work since at all; my limb is sore all the time at the knee; the injury is from the joint and on the right side of it. The pain from the hip and back affect my head so that I can not use my eyes to read or sew; it is so severe in my back and head. Dr. Edmunds treated me for six months, and after that Dr. Mooney, and I am still under his care. I am never without pain, and never rest well. If I read or sew the pain in my head is so great I can not use my eyes, and it makes my head ache worse. I am not able to do dressmaking work or housework of any kind. My average earnings were $20 a week.

On cross-examination she said: Am a married woman; my husband's name is Herbert W. Carvin, but we are not living together. On this particular day I had started to go to the hospital to see a sick friend; it was a Sunday afternoon about two o'clock. The hospital I refer to is the Rebecca Hospital on South Grand avenue; I intended going east on Washington avenue and transferring at Eighteenth street. I went north on the west side of Twenty-Second street, and when I reached Washington avenue I crossed over to the east side of Twenty-Second street; I started to the curb of the sidewalk, but did not reach it. I was starting to the other side of the sidewalk on Washington avenue and along the east side of Twenty-Second street, and while I was "engaged in that trip I stepped right on the cover." I was endeavoring to get to the shade of the telegraph pole on the edge of the curb about fifteen or twenty feet from Twenty-Second street, and just at the corner of the building where the cars stop; I endeavored to get on the east side of the telegraph pole; there was shade on the sidewalk near the pole; I had not reached the pole at the time I was hurt. I have no doubt about the time; it was about two o'clock and could not have been later. There was no

shade next to the south line of the building. It was while
walking towards the northeast so as to get into the shade of
the telegraph pole that I stepped on the lid. I was coming
from the south and west, and going towards the east, and I
think the lid slipped to the west. The building is a large
four-story building, and I maintain that at about two o'clock
that afternoon the telegraph pole was casting a shade towards
the south, and the building was casting no shade on the side-
walk. I stepped on the meter cover with my right foot;
think my foot was completely over the hole when I stepped on
the lid, or the cover. No part of the meter hole was exposed,
to my knowledge. Was looking at the sidewalk while walk-
ing; the top of the lid was between a quarter and a half inch
higher than the surface of the sidewalk; I think the meter
lid slipped to the west; I know it slipped off. Don't know
how heavy such a lid is; I should judge about twenty-five
pounds. I have seen this same lid before; it was just like
any other meter cover. I saw the lid before I stepped on it,
and it was apparently in the same condition it had always
been in. It looked no different to me on that day to what it
ever did before. These, shown me, are photographs of that
building and corner, and of the meter box, and are, I think,
correct pictures.

W. H. Burch testified for plaintiff that he lived at the
plaintiff's house, 2206 Locust street; had a room there. That
he had passed the point where plaintiff was hurt a number of
times. Knew the meter opening with the covering on it
near the southeast corner of Twenty-Second and Washington
avenue. He was then questioned and answered as follows:
"Did you notice its condition before Mrs. Carvin met with the
accident? A. Yes, sir; I noticed this always seemed kind
of up and always walked around it and thought it a very weak
kind of meter. I stubbed my toe against it. Q. To what
extent had you noticed it being up? Witness: Prior to the
time before she was hurt? Q. Yes? Witness: I saw a man

digging it out and putting it back and I have seen the meter open. Q. When? A. When a man would be there, I saw that a time or two. Q. When do you remember to have last observed the condition of that cover before this lady was hurt? A. It was a few days before. Q. When do you say you noticed it sticking up? A. Just before this accident happened. I just stepped behind it and I would just go around it, I did not walk over it. . . . Q. How was it before she was hurt? A. It just stuck up a little. Q. It did stick up some that you saw then? A. Not so much; I think the meter was always a little higher that the walk.

"Q. Can you state to the jury what you saw in the condition of this cover; how it acted under pressure. What may have been under it you do not know? A. I do not know what was under it. Q. Describe how it acted when pressure was put on it? A. It would spring up. Q. How did it when you tried it before she was hurt? A. I already stated that I did not cross it many times. Q. How long, Mr. Burch, did you notice it in that condition before this lady was hurt? Weeks or months; can't you say? A. I say weeks. Q. What was that? A. Weeks before, I noticed that it was not properly built.

"Q. Describe how it looked—tell the jury how it looked in its bed? A. I do not think it lay down; I do not think it was down flush. Q. I ask you what the situation was, how the cover lay on the bed before the lady got hurt? A. As I would approach going east from the west, the west side was higher than the flange. Q. How much higher? A. I said from one-half to three-eighths of an inch."

The witness stated that when he would step on the cover before the accident, it would spring so that he avoided it. That he had this experience more than once.

On cross-examination he testified that he had stepped on the lid several times before the accident, and that he avoided it before the accident.

John F. Pohlman testified for plaintiff as follows:  On August 12, 1894, I was inspector of the construction of sidewalks on the surface of the streets of St. Louis.  I remember plaintiff's being injured.  I was across the street about to take a car to return to the City Hall.  I saw the plaintiff fall and went to her assistance.  She was down in the hole with her skirts covering the meter box, so I can't tell to what extent she was in the hole.  The covering slid right up.  I put the cover back into position after she was taken out.  I don't remember taking anything from under the cover, though there was a little dirt there; I don't remember taking it out.  On cross-examination he said:  My duty is to inspect sidewalks.  I had seen this meter box before, and I noticed nothing about it out of place.  It was as nice and smooth, and looked like any other box.  I had occasion to pass that corner very frequently, because right there is a stable which belongs to my father and my brother-in-law, and I go there quite often.  There was nothing about the meter box to indicate that anything was out of order prior to the time the plaintiff met with her accident.  Nothing to indicate that it was out of its proper position.  The meter box itself was even with the level of the sidewalk.

The court excluded from the consideration of the jury all the statements of this witness with respect to the condition of the cover of the meter, after the accident occurred.  This was all the evidence adduced by plaintiff bearing upon the condition of the cover before the accident.

At the close of plaintiff's evidence defendants respectively asked an instruction in the nature of a demurrer to the evidence which was refused and defendants excepted.  Defendants then introduced a number of witnesses who testified to the condition of the meter cover at the time of and before the accident.

At the close of all the evidence the court gave a number of instructions for plaintiff over the objections of defendants,

some of which are challenged by them, and refused several instructions asked by them, which they assign for error, but as the case turns upon the instructions in the nature of demurrers to the evidence no others will be further noticed.

There is no pretense that the meter or the cover thereto was defective in its construction, but the case proceeds upon the theory that the sidewalk into which the meter is constructed became defective and so remained after notice to defendant city, either actual or constructive, hence the demurrer to the evidence should have been sustained. That there was no proof of actual notice is clear, therefore to entitle plaintiff to recover it devolved upon her to show that there existed a sufficient length of time before the accident a state of facts which would justify the inference that the city knew that the street had by reason of the defective condition of the meter become unsafe and dangerous to pedestrians walking thereon.

With respect to the condition of the meter plaintiff testified that it was apparently in the same condition that other meters are, which are about level with the sidewalks, but that she never noticed or examined them; that she did not notice the covering before she stepped on it, and in striking her foot against it it was raised; and that she had never noticed it before.

W. H. Burch a witness for plaintiff testified that weeks before the accident he noticed that the cover seemed kind of up, that he stubbed his toe against it, and walked around it. That the west side was one-half or three-eighths of an inch higher than the flange.

John H. Pohlman a witness for plaintiff stated that he was constructor of sidewalks for the city; that he saw plaintiff fall in the hole, and put the meter cover back after she got out; that there was one-eighth or one-sixteenth of an inch of dirt that had worked in under the flange, which he thought he cleaned out with a stick; that when plaintiff stepped on the cover it slid right up. Under the statements of the

witnesses, Burch and Pohlman, it can not we think, be said that there was no evidence tending to show that the cover of the meter was at the time of the accident, and for a sufficient length of time before, so defective as to justify the inference that the city had knowledge thereof, if the defect was of that character which is necessary to authorize such a conclusion. But it is insisted that the defect in order to have put the city on notice, must have been open, obvious and palpable, and that proof of hidden or latent defects, which would not attract or arrest ordinary attention, is not sufficient.

The mere fact that a person is injured by a fall upon a street occasioned by a defective sidewalk is no evidence of itself that the municipal corporation was negligent in keeping its streets in repair, nor is such corporation an insurer of pedestrians upon its streets and sidewalks against accidents, but its liability is for negligence in not performing its duty to the public in not keeping them in a reasonably safe condition and repair.

The injury is not charged in the petition to have been occasioned by the cover of the meter being above the sidewalk, but the allegations are "that said cover was entirely without fastenings, and was loose and liable to become displaced and removed, and the opening to be exposed; that dirt and debris had accumulated in the flanges and grooves, and under said cover, so that said cover was liable to slip and give way under pressure of weight," and the evidence shows that the injury was occasioned by plaintiff stepping with her right foot upon the cover, and the sliding of the cover to one side, thereby letting her foot drop down in the hole. There can be no question then but that the defect was a hidden one, and not open and notorious as contended for by plaintiff.

In Hanscom v. Boston, 141 Mass. 242, it was held that the city was not liable to a traveler on the highway for injuries sustained by falling into a coal hole in the sidewalk by reason of the fact that the cover to the hole, which was firm

and close fitting, lightly set in the sidewalk, preventing no obstruction to travel, and even and regular with the surface of the sidewalk, turned over when he stepped upon it, because not fastened on the inside, as it was designed to be, by the occupant of the cellar underneath the sidewalk, if the fact that it was unfastened was not known to any officer of the city, and was not apparent from the street.

In Burns v. City of Bradford, 137 Pa. St. 361, it was held that where there is no defect in the construction of a sidewalk, a municipal corporation is not liable for an injury occurring by reason of its unsafe condition at the time, unless it had express notice of the defective condition or the same was so notorious as to be evident to all persons passing. That if a defective condition be such that it is discovered by only one out of very many persons who pass by it, in the ordinary pursuit of business or pleasure, it can not be said to be notorious, or to be such a defect that the municipality is chargeable with constructive notice of its existence.

In Cooper v. The City of Milwaukee, 97 Wis. 458, the facts were on all-fours with those in the case at bar. It was said: "There is no evidence to sustain the verdict on the ground of actual notice to the city. The material questions for consideration arise upon the instructions given to the jury and upon those refused, relating to the question of implied or constructive notice of the alleged defects in the sidewalk and cover of the coal hole. In order to charge the city with negligence which was proximately the cause of the plaintiff's injury on the ground of implied notice, the defect in the sidewalk and cover of the coal hole must have been of such character or of so long a standing that the city must be presumed to have had notice of it. The city was bound to be vigilant in observing defects in the sidewalk, and in remedying them when they became observable to an officer exercising intelligent and reasonably vigilant supervision over them. . . . . The city is not an insurer against injuries or accidents occur-

ring on its sidewalks. . . . . The defect in the sidewalk in the present instance was a secret one, not apparent to ordinary observation; and the nature and character of a defect, notice of which would be imputed to the city within the rules stated, was not pointed out as it should have been by the trial judge, so that the instructions as given really left the jury without any proper guide on the subject, and wholly failed to meet the just requirements of the case. . . . . Besides, we think that it was not, and is not, the duty of a municipality such as the defendant city . . . . to examine covers to coal hole openings such as the one in question here, to ascertain if the covers to the same are unfastened, unless there is something apparent on the surface, or otherwise brought to their attention, to lead its officers to believe that the same are loose and likely to become misplaced."

Whatever defect there was in the cover of the meter, if any, was latent, and as the evidence failed to show that the city had notice thereof, or that it existed for a sufficient length of time before the injury to justify the assumption that it knew of its defective condition, as to it plaintiff was not entitled to recover.

With respect to the Glaes and Lehnbeuter Manufacturing Company: as the meter was constructed by it by permission of the city for its own exclusive use, no notice of its unsafe condition was required, but it was its duty to keep it in reasonably safe condition, so that pedestrians passing along on the sidewalk where it was located might not be injured thereby (Franke v. St. Louis, 110 Mo. loc. cit. 526, and authorities cited), but it was not the insurer of the safety of such persons, and as there was no substantial evidence that the meter cover was not in a reasonably safe condition at the time of the accident plaintiff also failed to make out a case against the defendant company.

In the case of Benjamin v. Street Ry., 133 Mo. 274, the plaintiff was injured by stepping on the cover of a coal hole

used by defendant. Owing to the quantity of coal in the basement the coal backed up into the chute, and extended up into the opening, so that when the cover was replaced it rested on the coal. There was also evidence tending to prove that the cover was not suitable or safe for pedestrians to walk over, and, it was correctly held that defendant should be held to respond in damages for the injury sustained. But in that case the defect was obvious, while in the case at bar no such state of facts was shown, and nothing we think which tended to show the company guilty of negligence either in constructing or maintaining the meter cover in a reasonably safe condition. The cover was in about the same condition of all other meter covers in the city, and to hold the defendant liable for damages for the injury under the circumstances upon proof of the injury alone, would be to hold that it was the insurer of the safety of all persons passing along the sidewalk near the meter, a doctrine which would be both unreasonable and unjust. Plaintiff's fall and injury seem to have been purely accidental and for which no person was to blame.

Our conclusion is that the demurrers to the evidence should have been sustained.

We therefore reverse the judgment and remand the cause. GANTT, P. J., and SHERWOOD, J., concur.