EMMA EICKELBERG, Appellant, v. CITY OF WATERLOO, Appellee.

**MUNICIPAL CORPORATIONS:** Negligence—Ice Accumulating from Approach to Property. A city is not shown to be negligent on evidence that, within a 24-hour period, water had flowed down an inclined approach to private property, and had formed a sheet of smooth ice upon a street sidewalk.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

MAY 13, 1924.

ACTION to recover damages for injuries received by a fall upon one of defendant's sidewalks. At the close of plaintiff's evidence, there was a directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*McCoy & Beecher,* for appellant.

*Harry M. Reed* and *Pickett, Swisher & Farwell,* for appellee.

ARTHUR, C. J.—I. The following statement may be made, disclosing the situation and facts in this case: In 1920, there was erected on a certain block in the city of Waterloo the East High School building. The ground, as improved, on the erection of the buildings, is somewhat higher than the surrounding streets. Vine Street runs east and west on the south side of the schoolhouse block. There is a cement sidewalk on the south side of the schoolhouse block. On the north side of said sidewalk, extending along the south border of the schoolhouse grounds, is a retaining wall, about two feet high. The top of

said retaining wall is seven or eight inches higher than the surface of the ground inside of the school ground. East of the school building, a cement driveway ten feet wide enters from Vine Street, extending north into the school ground, with a gradual upgrade from the street. In the first 37½ feet from the street, the driveway reaches an elevation of 3.14 inches. In the next 16 feet, it rises 1.27 inches; and in the next 36 feet, it rises 1.45 inches,—making a total elevation, at the end of 87½ feet, of 5.86 inches above the street. The sidewalk along Vine Street south of the schoolhouse block is eight feet wide, and slopes from the east to the west. Across the 10-foot driveway, the fall is one tenth of a foot. The sidewalks across the driveway also dip slightly toward the street: on the east side of the driveway .14 of an inch in the eight feet, and on the west side .17 of an inch. It is conceded that the sidewalk in question was constructed by the city of Waterloo, under plans and specifications prepared by the city engineer, who was a competent civil engineer. Excavation was made for laying the driveway so that it would have a gradual and practically uniform grade from the street into the school grounds. A considerable area of the eastern portion of the school ground slopes toward the driveway, and rain falling thereon and snow and ice melting thereon go into the driveway and flow down across the sidewalk to the street. Also, precipitation on the roof of a part of the school building, 11 by 40 feet, finds its way into the driveway.

Between 12 and 1 o'clock in the daytime on February 6, 1921, appellant, while walking west on the sidewalk, fell, at the intersection of the walk and driveway, near the west edge of the driveway, and received the injury for which she seeks to recover in this case. At the close of plaintiff's testimony, on motion of appellee, the court directed a verdict. Appellant's claim is that there was ice, a piece about two feet wide, across the sidewalk, on which she slipped and fell, causing her injury.

II. The question presented is whether the evidence offered by appellant, giving to it the probative effect· which must be accorded on motion to direct an adverse verdict, was sufficient to make out a case to go to the jury. To reverse the case, it must appear that there was sufficient evidence to prove both the neg-

ligence of the city and that such negligence was the proximate cause of the injuries sustained by plaintiff.

The evidence shows that there was a piece of smooth ice on the sidewalk where appellant fell. Appellee contends that the evidence does not show that she slipped on the ice. We will consider the case on that point later, if necessary. The ice on the sidewalk was formed of water from the school ground which flowed down the driveway onto the sidewalk and froze. Counsel for appellant strenuously argues that the water flowing off the school ground was artificially upon the sidewalk, and that ice formed from that water was artificial ice; and that, because water had flowed off the school premises down the driveway for a long time before the accident, the city thereby would have constructive notice of any ice that formed at this particular spot, regardless of when the particular ice complained of was formed, with reference to the time of the accident. Stating his position, counsel for appellant tersely says:

"It was and is the contention of the plaintiff that the accumulation of ice at the point where plaintiff was injured was due to artificial and unnatural causes, of which the city had notice, and that the defendant was negligent in the following particulars," in substance: (1) In constructing and maintaining said sidewalk with a sloping surface; (2) in permitting the school district to erect the driveway in such a manner as to discharge the water from the school premises down the driveway onto the sidewalk; (3) in not providing means to prevent the water from the school premises from flowing down across the sidewalk; (4) in permitting the water to accumulate and freeze on the sidewalk at the point where the plaintiff was injured; (5) in not removing the ice on said sidewalk; and in not covering said sidewalk on which the ice was located, with sand, cinders, or other material which would prevent pedestrians from falling.

III. Without any doubt, we may correctly say, and we accordingly hold as a matter of law, that there was no negligence in the construction of the sidewalk in question, and no negligence in the manner of construction of the driveway. The school district had a right to grade its block of ground, and had a right to construct a driveway for access to its property. Almost all lots in a city, in erecting buildings upon them, are changed

from their original condition. Even the dirt from excavation for basements and cellars spread over a lot results in raising the lot in such a manner as to cause the water to flow therefrom onto surrounding sidewalks. It is a matter of common knowledge that driveways are constructed from the street into premises, and we think it must be conceded that an abutting owner has the right, especially in these days of automobiles, of access to his property by driveway. If he has such right, and the grade of the lot is above the sidewalk, necessarily the slope of the drive must be toward the walk; and water will naturally flow down such driveway onto and across the walk, and in winter weather will naturally freeze. If it should be held by the courts that a. city is liable for water flowing down a driveway of abutting property, with the driveway constructed in a proper manner, it would follow that a city would also be liable for water flowing off the abutting property, if the typography had been changed. We think that no such theory or rule would be sound. It is conceded that the city had no actual knowledge of the ice on the sidewalk. There is no dispute in the evidence that the particular ice in question formed within about twenty-four hours before the accident. Prior to the night of February 5th, there had been no snow, to amount to anything, for several weeks. There was no snow on the ground on February 4th. The testimony shows that there was no snow or ice on the sidewalk at the place where appellant fell, on the afternoon preceding her fall, although there may have been some water running down the driveway. Witnesses who traveled over the walk frequently, testified that, during the winter months prior to the accident, they had observed water running over the sidewalk from the driveway, and that it would freeze and form ice on the sidewalk; that they found ice on the sidewalk, any time it would freeze, during two or three months before the accident. One witness testified that "there was ice on the sidewalk the day preceding the injury of Mrs. Eickelberg," but did not specify the time of the day when he observed the ice, whether in the forenoon or afternoon. Other witnesses testified that Saturday, the day before the accident, was a warm day, and it thawed, and some water was running down the driveway. Mrs. E. J. Scott, who passed over the place of the accident at 2 o'clock in the

afternoon on Saturday, positively testified that, ''on Saturday afternoon, February 5th, there was no ice at the place of the accident;'' that it was thawing at that time.    Charles Eickelberg, husband of appellant, testified that there was ice on the sidewalk Sunday morning, the day of the accident.   No witness testified to there being ice at the spot of the accident on the afternoon of Saturday, the day before the accident.   Appellant testified that she examined the ice after she fell; that ''it was very smooth; it was smooth as glass.''   The ice on the sidewalk upon which appellant claims she slipped, if it had been of a character to constitute negligence in permitting it to be there, did not exist for a sufficient length of time to give the city constructive notice thereof.   *Beirness v. City of Missouri Valley*, 162 Iowa 720.

The evidence without dispute shows that the ice complained of was level and smooth.   The evidence shows without dispute that the weather was warm, and that it had thawed in the afternoon of February 5th, the day before the accident; that, at the time and place of her fall, there was newly fallen snow, where there had been neither snow nor ice the previous afternoon.   So the ice at the spot where she fell was quite newly formed.   The evidence is clear that the ice complained of was level and smooth. It was in its natural form and condition, and had not been changed by any artificial means; had not been changed by tramping of pedestrians or by vehicles driving over the same, or in any manner whatsoever, but existed in its original and natural state.   Under this situation of facts, the city was not liable for injuries sustained by appellant; and for this reason alone, without consideration of other features of the case, it was not error to direct verdict in favor of the city.   *Dempsey v. City of Dubuque*, 150 Iowa 260; *Ray v. City of Council Bluffs*, 193 Iowa 620.

There are numerous other cases holding that a city is not liable for injuries sustained by persons slipping upon ice made level and smooth by natural causes.   Among them are *Tobin v. City of Waterloo*, 131 Iowa 75.

We have no occasion to discuss claimed errors in rulings

on admission of testimony. Neither is there necessity to discuss the question of proximate cause.

The case is affirmed.—*Affirmed.*

EVANS, PRESTON, and FAVILLE, JJ., concur.