[Civil No. 2671.   Filed February 28, 1928.]

[264 Pac. 692.]

KORRICKS DRY GOODS COMPANY, a Corporation, Appellant, v. ED KENDALL, Appellee.

Mr. Samuel White and Mr. Verle R. Seed, for Appellant.

Messrs. Struckmeyer, Jennings & Strouss and Mr. Leon S. Jacobs, for Appellee.

McALISTER, J.—This action was brought by Ed Kendall against Korricks Dry Goods Company to recover damages for injuries received by him in a fall on a sidewalk in front of a building in the city of Phoenix owned and used by the latter. The trial resulted in a verdict for the plaintiff in the sum of three thousand dollars and from a judgment entered thereon as well as from an order denying its motion for a new trial, the defendant prosecutes this appeal.

The building in question, a four-story structure, was erected in 1914 at the northeast corner of Washington and First Streets and has a frontage on the former of sixty feet. From its front across the sidewalk to the curb line there is a drain connected with a metallic pipe or down spout from the roof through which the water falling on the top of the building is carried to the gutter. This drain is a trough in the concrete twelve inches in width by six inches in depth, the top of which is covered with scoriated cast-iron

plate level with the walk though it slants slightly downward from the east to west, to wit, about one-eighth of an inch, but leaves no break or unevenness whatever in the surface where it and the concrete join. When installed this plate was scoriated and rough to prevent slipping and at the time of the trial the scoriations toward the building and the curb could be seen practically as well as at first, and the old scoriations in the middle, though worn some, were also clearly visible. Just east of the four-story building is a one-story annex with a frontage of forty feet and the sidewalk in front of it is about six inches higher than that in front of the main building. The step which this difference in height in the sidewalk would necessarily make, unless eliminated in some way, was practically removed by an incline beginning about one foot east of the iron plate and rising six inches in a distance of a foot and a half or two feet. On February 16th, 1926, as appellee in company with another was walking west and in the act of crossing the drain, his left foot being on the incline, he put his right on the iron plate and its surface was so slippery and smooth that his foot slipped from under him and caused him to fall and break his right thigh bone.

The gist of the complaint is that appellant constructed and maintains this iron covering over the drain for the benefit of its own property and that in consequence of this it was its duty to maintain such covering in a safe condition for those passing over it, but that notwithstánding this fact appellant negligently allowed it to become smooth, slippery and dangerous and so maintained it, and that by reason thereof appellee slipped thereon and fell, causing the injury of which he complains. To this complaint the defendant filed a general demurrer and a general denial and set up certain other matter as a special

defense. The demurrer was overruled, whereupon the case proceeded to trial.

Following the introduction of testimony in behalf of appellee showing substantially the foregoing facts, appellant, notwithstanding the provisions of paragraph 1946, Revised Statutes of 1913, Civil Code, to the effect that the court shall take judicial notice of the ordinances of cities and towns, read in evidence several of those of the city of Phoenix and among them was section 57 of No. 322 which was in effect when the building in question was erected. It was in the following language:

"All buildings hereafter erected shall be kept provided with proper metallic leaders for the conducting of the water from the roof to the ground connecting with the street or alley gutter in such manner as shall protect the walls and foundations from drainage; and in no case shall the water from such leaders or other conductors be allowed to flow upon the sidewalks, but it shall be conducted by a covered drain pipe to the gutter."

The other ordinances and certain sections of the general statutes of the state disclose that the city had full control of the construction, repair and maintenance of all concrete sidewalks, gutters, curbs, streets, etc., and that no change whatever in any of these could be made by an abutting owner without its consent or approval, and it is appellant's position that under such provisions there was no duty resting upon it to maintain the sidewalk in a safe condition for pedestrians and, therefore, that it was error to deny its motion for a directed verdict made at the close of the evidence in the case. Appellee admits that the general rule, even in the absence of special provisions requiring it, is that a property owner is under no common-law duty to keep safe the sidewalk abutting his premises (*Cummings* v. *Henninger*, 28 Ariz. 207, 41 A. L. R. 207, 236 Pac. 701), but takes the position

that the drain constitutes a servitude and comes within the exception to this rule, perhaps as universal in its application as the rule itself, which imposes upon the one who creates it the duty of maintaining it and, if he fails to do so and injury results from his negligence, makes him liable in damages therefor (*Cummings* v. *Henninger, supra; Monsch* v. *Pellissier,* 187 Cal. 790, 204 Pac. 224; *City of Newport* v. *Schmit,* 191 Ky. 585, 231 S. W. 54; *Reedy* v. *St. Louis Brewing Assn.,* 161 Mo. 523, 53 L. R. A. 805, 61 S. W. 859; 115 Am. St. Rep. 994, note).

It is therefore, merely a question whether the drain in controversy constitutes a servitude, which is the term used in the civil law to express the idea conveyed by the word "easement" in the common law and may be defined as a right in the owner of one parcel of land, by reason of his ownership, to use the land of another for a special purpose of his own, not inconsistent with the general property in the owner. Familiar examples of these are trap-doors, light-wells and manholes in the sidewalk which give the abutting owner the right to use that portion of the property of the city for his own benefit without interfering appreciably with the use to which the city puts it. *Kieffer* v. *Imhoff,* 26 Pa. (2 Casey) 438; *Laumier* v. *Francis,* 23 Mo. (Jones II) 181; *Ritger* v. *Parker,* 62 Mass. (8 Cush.) 145, 54 Am. Dec. 744. And where a privilege of this kind is given it would appear to be perfectly plain, as just stated, that there should rest upon the recipient of it the obligation to keep that portion of the sidewalk safe for those passing along it, and this is true even though it is the duty of the city to keep its streets and sidewalks in repair. *Monsch* v. *Pellissier, supra.* As said by the court in *Reedy* v. *St. Louis Brewing Assn., supra:*

"If he is allowed an extraordinary use of the sidewalk for his private convenience, as, for example, to place in it a manhole for the reception of coal (*Benja-*

*min* v. *Railway Co.*, 133 Mo. 274, 34 S. W. 590), a water meter (*Carvin* v. *City of St. Louis*, 151 Mo. 334, 52 S. W. 210), or an excavation in close proximity to the sidewalk for a foundation for a new building (*Wiggin* v. *City of St. Louis*, 135 Mo. 558, 37 S. W. 528), the law imposes on him the exercise of reasonable care to guard the public from injury in such use.''

Whether the drain is a servitude, that is, whether it sustains to appellant's building the relation a light-well, manhole or trap-door would, depends, therefore, upon the answer to the query: "For whose benefit does it exist?" It is conceded that it was constructed and is maintained to carry under the surface of the sidewalk to the gutter the water brought to the ground through a pipe or down spout from the roof of appellant's building, and appellee claims that this alone shows that it was placed there for appellant's benefit. But it is contended by the latter that its purpose was to subserve the public interest and that this is shown both by the service it performs and by the fact that section 57 of Ordinance 322, *supra,* requires that roof water be taken care of in this way.

To what extent, if at all, appellant's property is benefited by taking the water through the drain rather than by discharging it on the sidewalk and permitting it to find its way to the gutter, as was allowable in the city prior to 1910, is not disclosed by the evidence; neither is there anything in the record showing that appellant sought permission to construct the drain. It was, it is true, included in the plans and specifications of the building but this was due to the fact that appellant was compelled to comply with the provisions of Ordinance 322, for in the absence of such a requirement it could, in accordance with the custom theretofore prevailing, have lawfully discharged the water on the sidewalk and permitted it to reach the gutter over the surface thereof. That

this is true is shown by the fact that to have done so would have violated no provision of law and have been practically without effect so far as causing injury to anyone was concerned. Discharging water upon the walk might, it is true, have been of some inconvenience to pedestrians; in fact, it was this that prompted the city to prohibit it, but in Phoenix, where there is no snowfall and a very light rainfall and the weather, even in winter, is so warm that water upon the sidewalk seldom, if ever, freezes, the probability of injury to a pedestrian as a result thereof is so slight that we are unable to see wherein it benefits the property of appellant in any degree to take the water through the drain rather than discharge it upon the sidewalk. In a very similar case (*Wenzlick* v. *McCotter,* 87 N. Y. 122, 41 Am. Rep. 358), the court of appeals said:

"The water itself is no injury; nor was the owner of the property forbidden by any ordinance to relieve his roof in that manner."

It used this language:

"I do not, however, find the law to be that a conductor pipe, designed to convey water from the roof to the ground, when constructed with due care and proper precaution, is in itself unlawful, so that it can be deemed a nuisance, even if its mouth is toward the walk, and it discharge upon it. Of course, if it was a wrong or a trespass, the recovery here might be justified. But the water itself is no injury; nor was the owner of the property forbidden by any ordinance to relieve his roof in that manner. It is common in cities to direct rain or melting snow from the roof to the gutter and thence to the leader, and so on to the sidewalk or street. Unless prohibited by positive regulation it is not an offense. If when gathered the water is poured upon the traveler, a different question would arise. But as the care of streets and sidewalks is intrusted to the municipality, if they do not object to this discharge, I do not see how an individual can. Once upon the walk, and

there frozen and permitted to remain, it may subject the municipality to an action for an omission of duty.''

In so far, however, as this case holds that an abutting owner may collect in a leader and discharge upon the sidewalk water from his roof and permit it to remain there 'and freeze without rendering him liable to one injured thereby, it is overruled in the later case of *Tremblay* v. *Harmony Mills,* 171 N. Y. 598, 64 N. E. 501, in which the same court held that discharging water in this manner upon the walk *"in winter weather, when the water so discharged was liable to freeze and form ice"* (italics quoted portion), made the sidewalk dangerous and rendered the person responsible for it liable for any injury sustained thereby. This is in line with practically all the authorities and is clearly correct where the climate is such that rain is apt to fall and, if discharged upon the sidewalk from the roof, liable to freeze and render the sidewalk dangerous. *Field* v. *Gowdy,* 199 Mass. 568, 19 L. R. A. (N. S.) 236, 85 N. E. 884; *Striger Admr.* v. *Deickman,* 158 Ky. 337, 51 L. R. A. (N. S.) 309, 164 S. W. 931; *Reedy* v. *St. Louis Brewing Assn., supra.* But in Phoenix, where climatic conditions are such that there is very little, if any, probability that this will ever occur and consequently that appellant will ever be called upon to respond in damages for an injury caused thereby, it is not apparent how the drain could benefit its property but is clear that the individual holders of the stock of the corporation to which the building belongs who use the sidewalk are benefited by it to the same extent, and no further, that any other person passing along it is.

This, it occurs to us, shows conclusively that appellee's contention that the city had no particular interest in the drain and was in no way benefited by it is not well founded. It is wholly out of harmony with

the very purpose for which Ordinance 322 was adopted, because there can be no question but that it was enacted to protect the public from eaves-drip and water flowing across the sidewalk. In fact, if this were not true there existed no occasion for its adoption, for in the enactment of any ordinance relating to building, or abutting property, the city does not concern itself with matters merely beneficial to the owner, but with the things in which the public is interested. It is this that makes any subject of municipal legislation a proper one. Hence, it is evident that in providing that all buildings thereafter erected should be equipped with metallic conductors from the roof to the sidewalk and covered drains connected therewith on to the gutters, similar to the one in question, the city authorities were doing what in their judgment would benefit the public, since upon no other theory would it have had the power to make such a requirement and it should be assumed that it was adopted in the light thereof.

As already appears in section 57, Ordinance 322, was in full force and effect when the drain was constructed and since by its terms appellant was compelled to build the drain and there is nothing indicating that it would have done so had there existed no requirement to that effect, the presumption is that it was constructed pursuant to the provisions of this ordinance and not voluntarily. This, while perhaps not conclusive, is an important factor in determining whether the drain constitutes a servitude, for the reason that a special privilege of this character is rarely, if ever, forced upon one but usually granted only upon request. It is apparent that the owner of abutting property could not against his will be compelled to use a portion of the sidewalk for his own benefit in a manner separate and distinct from that in which the public uses it, such, for instance, as a trap-door through which his merchandise is taken to

the basement. Such a privilege being exclusively for his benefit, it is for him to decide whether he needs it and if he does his self-interest will lead him to seek it and the city, unless an investigation discloses that it will too greatly inconvenience the public, grants it.

To sustain his contention that the drain is a servitude appellee cites the case of *City of Louisville* v. *Metropolitan Realty Co.*, 168 Ky. 204, 182 S. W. 172, and a reading of this opinion discloses that the court did hold that a drain constructed substantially as the one in the case at bar and for the same purpose is for the benefit of the abutting property and constitutes a servitude. It does not appear, however, that there was an ordinance in the city of Louisville requiring the owner of abutting lots to build drains to care for roof water but one gathers the impression from reading the decision that there was not any such provision but that the drain in that case was constructed voluntarily. It must be kept in mind also that the climate in that state is such that water discharged upon the sidewalk in the winter is very likely to freeze, thus rendering the walk dangerous, and that the abutting owner responsible for this condition is liable for any injury resulting therefrom.

We are clearly of the view that the drain in question is not a servitude, that it was not appellant's duty to maintain it and, therefore, that it was not responsible for the slippery, smooth condition of the surface of its covering which caused appellee's injury. It follows that denying appellant's motion for a directed verdict was error.

The judgment is reversed, and the cause remanded with direction that judgment be entered for appellant.

ROSS, C. J., and LOCKWOOD, J., concur.