CHILDERS, Appellant, v. DESCHAMPS et al.,
Respondents.

(No. 6,611.)

(Submitted May 8, 1930.   Decided June 12, 1930.)

[290 Pac. 261.]

506

*Mr. Harry H. Parsons,* for Appellant.

*Messrs. Murphy & Whitlock,* for Respondents.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Alta V. Childers, has appealed from a judgment entered against her on an instructed verdict in favor of the defendants Ulrich W. Deschamps, Arthur Deschamps and the Deschamps Implement Company, a corporation.

Plaintiff brought action to recover damages for injuries sustained when, on December 22, 1927, she fell on an icy sidewalk at the corner of Main and Stevens Streets in the city of Missoula, which corner is occupied by a business block owned by the individual defendants and rented by the de-

fendant corporation. The complaint alleges that at the time of the accident there existed an ordinance of the city of Missoula requiring property owners and tenants to keep the sidewalks in front of and adjoining their premises "clean and safe for pedestrians," and to remove all snow and ice "with dispatch," and all "night's accumulations" thereof before 9 o'clock of the following morning, and, when a sidewalk has become dangerously slippery, such owners and tenants are required "forthwith" to sprinkle sand or ashes thereon. Failure to comply with the requirements of the ordinance renders the owner or tenant subject to fine.

It is then alleged that at the southwest corner of defendants' building (the street corner) defendants maintained a metallic pipe or aqueduct which carries water, etc., from the top of the building to the sidewalk, and that for more than a year prior to the accident this pipe was "out of order, leaky and defective," and as a consequence water escaped therefrom above the level of the sidewalk and ran on to and across the sidewalk, and at the time of the accident and for more than twenty days prior thereto, as a result of this condition, there had existed "an icy comb, strip or elevation" varying from one to five inches in height, from the corner of the building across the sidewalk and toward the street a distance of more than six feet. This corner is alleged to be in a densely populated business district of the city.

The complaint alleges that the defendants "in violation of said city ordinance" negligently and carelessly failed to repair the pipe to prevent the discharge of water and the forming of ice and maintained it in a leaky condition; "that they likewise, during said period, negligently and carelessly permitted ice to accumulate upon the sidewalk" and there to remain for a period of several weeks prior to the date of the accident.

As to the accident it is alleged that on December 22, 1927, at about 10:30 P. M., plaintiff, while turning the corner mentioned and while exercising due care, "stepped upon and against the said obstruction of ice" and "by reason of the

negligence of the defendants aforesaid'' was violently thrown to the sidewalk and ''as a direct and proximate result of said negligence and said fall'' sustained serious injuries, which are fully described in the complaint.

It is alleged that the condition and facts alleged were known to the defendants for more than three weeks prior to the accident, ''or by the exercise of due care, caution or inquiry, upon their part or the part of either of them, would have and should have been known to them.''

To the complaint the defendants interposed a general demurrer, which was overruled, and thereafter answered denying negligence and the existence of a dangerous condition of the sidewalk; they alleged affirmatively that the sidewalk was cleared of snow and ice on December 22, 1927, and that, if there was any snow or ice there at the time of the accident, it was an accumulation from natural causes after the walk had been cleaned and that, if plaintiff sustained injuries at the time mentioned, they resulted from her contributory negligence in failing to exercise ordinary care in observing and proceeding along the sidewalk. The answer admits that defendants maintained pipes as alleged, for the purpose of conducting water from the top of the building to the city sewers, but denies that the pipes, or any of them, were leaky or defective, or that ice formed on the sidewalk by reason of water escaping from the pipe in question.

The cause was tried to a jury, and, at the close of plaintiff's case, defendants moved for a nonsuit, which motion was denied and they then introduced testimony to combat that of the plaintiff. Both sides having rested, defendants moved the court to direct a verdict in their favor, which motion was sustained, and on the directed verdict judgment for defendants was duly entered. Plaintiff moved for a new trial on the grounds that the court abused its discretion, errors in law occurring at the trial, insufficiency of the evidence to justify the verdict, and that the verdict is against law. The motion for new trial was denied. The questions raised by the specifications of error are:

(1) Does the violation of the city ordinance pleaded give rise to a cause of action by a person injured by reason thereof?

(2) Does the evidence show negligence on the part of the defendants, or any of them, which, under the allegations of the complaint, was the proximate cause of plaintiff's injury and for which defendants might be compelled to respond in damages?

(3) If a cause of action existed, was the evidence in support thereof sufficient to compel submission to the jury?

(4) Does the evidence show contributory negligence barring recovery?

Primarily, the duty is imposed upon a city to keep its sidewalks in reasonably safe condition for the protection of the traveling public, which, of course, includes keeping them free from snow and ice, but the performance of this duty may be delegated to the owners of adjoining premises (sec. 5039, subd. 7, Rev. Codes 1921, as amended by Chapter 20, Laws 1927), by ordinance enacted under the police power of the city. (*City of Helena* v. *Kent*, 32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258.) Such an ordinance is not intended, however, for the protection of the individual by the property owner, but in aid of the city in discharging its duty to the public and the individual; it but makes the property owner a joint agent with the street commissioner and other employees of the city in performing the duty of the city. As the fee to the sidewalks of a city is in the city, at common law, and generally, in the absence of a statute to the contrary, the abutting owner owes no duty to the traveling public to keep the sidewalk in front of his premises free from snow and ice.

It is frequently declared that the violation of a statutory duty constitutes negligence *per se,* and, in a proper case, the rule would be the same as to the violation of an ordinance; but the rule applies only when the duty is primarily that of the person sought to be held.

As a property owner, in removing the natural accumulation of ice and snow, acts only as the agent of the city in the performance of its primary duty, an action predicated upon fail-

514

ure to comply with the requirements of the ordinance will not lie against the property owner. (*Hanley* v. *Fireproof Bldg. Co.*, 107 Neb. 544, 186 N. W. 534, 24 A. L. R. 382, and cases discussed in note. See, also, *Sewell* v. *Fox*, 98 N. J. L. 819, 28 A. L. R. 1357, 121 Atl. 669; *Russell* v. *Sincoe Realty Co.*, 293 Mo. 428, 240 S. W. 147; *Brotzman* v. *Lindenfeld*, 133 Misc. Rep. 832, 234 N. Y. Supp. 79; *Smith* v. *Meier & Frank Inv. Co.*, 87 Or. 683, 171 Pac. 555; McQuillin on Municipal Corporations, 2d ed., sec. 902.) However, the familiar doctrine that, while the owner of land is not responsible for the natural flow of surface water across his land onto another's, he is liable if he so collects such water by artificial means and discharges it in bulk at a given point upon his neighbor's land, has application here, and, under this doctrine and that of responsibility for the creation of a nuisance, it is generally held that where a property owner collects the water from his roof and by means of a pipe, spout or trough, conveys it to, and discharges it upon, a public way where, through the operation of natural causes, ice forms constituting a menace to passers-by, his act is the efficient cause in the creation of a nuisance, and he may be held liable for whatever damage results as a probable consequence. This liability does not arise from the fact that he is the owner of property abutting on the sidewalk, but from the fact that he is instrumental in causing the condition either by his wilful act or negligent omission to perform a duty which the law imposes upon him, and does not impair the doctrine laid down in the cases above cited. (*Tremblay* v. *Harmony Mills*, 171 N. Y. 598, 64 N. E. 501; *Field* v. *Gowdy*, 199 Mass. 568, 19 L. R. A. (n. s.) 236, 85 N. E. 884; *Stephens' Admr.* v. *Deickman*, 158 Ky. 337, 51 L. R. A. (n. s.) 309, 164 S. W. 931; *Reedy* v. *St. Louis Brewing Assn.*, 161 Mo. 523, 53 L. R. A. 805, 61 S. W. 859; *Korricks Dry Goods Co.* v. *Kendall*, 33 Ariz. 325, 58 A. L. R. 145, 264 Pac. 692; *Benard* v. *Woonsocket Bobbin Co.*, 23 R. I. 581, 51 Atl. 209.)

Predicating her cause of action upon the failure of the defendants to obey the mandate of the ordinance alone, the com-

plaint would not state facts sufficient to constitute a cause of action, nor would plaintiff's proof entitle her to a recovery, and, on that theory alone, the court should, and probably would, have sustained the demurrer to the complaint or the motion for nonsuit. However, paragraph IV of the complaint, without mention of the ordinance, describes the drain-pipe erected by defendants at the corner of their building, and alleges that, for a long period of time prior to the accident, the pipe had been "out of order, leaky and defective" and "as a direct and proximate result" of this condition, water from the top of the building escaped from the pipe and poured over the sidewalk where, at the time of the accident and for a long period of time theretofore, such water froze and created the condition causing the accident. It is further alleged that the defendants "negligently and carelessly maintained the said pipe in said leaky and broken condition," and permitted the ice to accumulate, and that "the conditions and facts" were known to the defendants for a period of three weeks prior to the accident, or they, by the exercise of due care, caution or inquiry, "would and should have known of them."

The complaint therefore stated a cause of action under the second doctrine above (*Field* v. *Gowdy*, above) and it must be presumed that it was on this theory that the court over-ruled the demurrer to the complaint, and motion for judgment of nonsuit. The latter ruling indicates that the court was of the opinion that plaintiff had made out a prima facie case; when, therefore, the court directed a verdict for defendants, it must have been on the theory that the testimony on behalf of defendants overcame the prima facie case made; but if this be the fact, the question presented was for the jury.

"No case should ever be withdrawn from the jury unless the conclusion necessarily follows, as a matter of law, that a recovery cannot be had upon any view which could reasonably be drawn from the facts the evidence tends to prove," or unless the evidence is so unsubstantial that the court would feel compelled to set aside a verdict if one should

be rendered, and, on consideration of the evidence in this regard, it must be deemed to prove every fact which it tends to prove, considering it in the light most favorable to the plaintiff. (*Rau* v. *Northern Pacific Ry. Co., post*, p. 521, 289 Pac. 580.)

While negligence must be shown and will not be presumed (*Reino* v. *Montana Mineral Land Dev. Co.*, 38 Mont. 291, 99 Pac. 853; *Varn* v. *Butte Electric Ry. Co.*, 77 Mont. 124, 249 Pac. 1070), and, in such a case as this, the doctrine of *res ipsa loquitur* cannot be invoked (*Lyon* v. *Chicago, M. & S. P. Ry. Co.*, 50 Mont. 532, 148 Pac. 386), the facts constituting negligence may be established by circumstantial evidence, if such evidence tends more strongly to establish the theory of the plaintiff than an inconsistent one. (*Fusselman* v. *Yellowstone Valley L. & I. Co.*, 53 Mont. 254, Ann. Cas. 1918B, 420, 163 Pac. 473.)

The plaintiff, it is true, made no attempt to prove physical defects in the drain-pipe, but did introduce the following testimony: One Harry Vassar, night clerk at a hotel across the street from the defendants' building, testified that on the night of the accident he saw two people fall at that corner and, while he did not see her fall, saw the plaintiff carried from that point, and then crossed the street and sprinkled ashes and salt "around the corner," over an expanse of ice existing there, and stated "it looked like a little water had been dripping from a pipe where a car had hit some time before and cracked it, and water seemed to be coming out of the spout."

Witness Frank Speath testified: "It was kind of a bad corner there for a week or so; I know it was pretty icy, prior to the time she was hurt * * * it looked as though water came from somewhere and had kind of frozen in a kind of pile, like, and then spread out, because I know I was a little bit leary when I went around the corner; I used always to watch myself when I went around; it was nearest the building where the thickest part of this ice was, and the narrowest part * * * it widened out toward the street." The wit-

ness stated that this condition had existed "for a week or more" prior to plaintiff's accident.

George Brown testified that he had seen other persons slip at the corner for four or five days prior to plaintiff's accident which "occurred practically at the corner."

Mrs. Bert Snell stated that, just prior to plaintiff's accident, she turned that corner, and, although she was "very careful," she fell; she described the condition of the sidewalk about as did the other witnesses.

Plaintiff's husband told of examining the place of the accident the morning after his wife's injury; he stated that the strip of ice started near or "up against the pipe" where it was thickest and was probably ten inches wide "at the base where it came in contact with this pipe," and that it widened and thinned out across the sidewalk.

There can be no question but that all of these witnesses were referring to the condition at the corner of defendants' building where the accident occurred, and to the drain-pipe, admittedly erected and maintained by the defendants, and this evidence tends strongly to show that the water which froze and formed the ice on which plaintiff slipped and fell, escaped from the pipe, a condition which could not have arisen had the pipe not been "out of order, leaky and defective." It further tends to show that the condition had existed for a period of time which, in view of the fact that this was a busy corner in a populous city at which defendants maintained a business house, employing a man to care for and clean the sidewalk, would bring home to defendants notice thereof. The question of notice in such a case is one of fact, to be determined from the circumstances peculiar to the instant case. In *Reedy* v. *St. Louis Brewing Assn.*, above, it was held that proof of the existence of ice on the sidewalk for a period of twenty-four hours prior to the accident was sufficient for the submission of the question of constructive notice to the jury.

Defendants produced testimony, it is true, strongly tending to contradict this testimony, in part at least, "but all these divergent statements were for the jury to weigh, and it could

not have been ruled as matter of law that the defendants must be exonerated." (*Drake* v. *Taylor*, 203 Mass. 528, 89 N. E. 1035.)

Counsel for defendants, however, assert that, as the evidence does not show that the ice was rough or ribbed, thus forming an "obstruction" against which a person might stumble, there is no liability, since it is only such a condition which would give rise to liability on the part of the city (citing *O'Donnell* v. *City of Butte*, 65 Mont. 463, 32 A. L. R. 1284, 211 Pac. 190, and *Storm* v. *City of Butte*, 35 Mont. 385, 89 Pac. 726), and that the individual owes no greater duty to pedestrians than does the city. Incidentally attention is called to the fact that since these cases were decided, but after the injury here complained of was suffered, the legislature relieved cities and towns in this state from all liability for negligence on its part, or that of its officers, agents, servants or employees, in permitting or allowing snow or ice to remain or accumulate on its sidewalks and public ways. (Chap. 132, Laws 1929.)

Our cases cited have to do only with obstructions created by natural causes, but the doctrine has been extended in other states to include an icy condition, whether arising from natural or artificial causes, holding that a mere slippery state of the sidewalk gives rise to no liability on the part of the municipality. (*Billings* v. *Worcester*, 102 Mass. 329, 3 Am. Rep. 460; *Henkes* v. *Minneapolis*, 42 Minn. 530, 44 N. W. 1026; *Cook* v. *Milwaukee*, 27 Wis. 191; *Barker* v. *Rockford*, 239 Ill. App. 528; *Eickelberg* v. *Waterloo*, 197 Iowa, 1219, 198 N. W. 638; *Mayo* v. *Baraga*, 178 Mich. 171, 144 N. W. 517.) This doctrine is not, however, universal, even with reference to the liability of municipalities (see *Reedy* v. *St. Louis Brewing Assn.*, above), and the liability of the individual rests upon an entirely different basis; that is, the creation, by his negligence, of a dangerous condition of the sidewalk, not failure to remove an obstruction therefrom.

Here the condition proved is a slippery piece of sidewalk, by reason of the formation of ice on an otherwise clear sidewalk, existing at a corner and causing at least some grade

in an otherwise level sidewalk. The creation of such a condition must necessarily constitute a nuisance. To say that the fact that the ice was smooth and slippery, instead of rough or ridged, would relieve defendants from liability for the creation of the nuisance would not be compatible with reason, and in cases cited above, holding individuals liable under such circumstances as are here shown, the doctrine of liability or nonliability by reason of the rough or smooth condition of the ice is not considered.

Counsel for plaintiff aptly illustrates the fallacy of the above assertion, as applicable to an individual, as follows: If one were to split a six-inch slippery elm timber in twain and place it across the sidewalk with the rough bark on he would be negligent, but if he removed the bark so that the slippery elm was perfectly smooth, glossy and sleek, there would be no obstruction.

We are of the opinion that it was immaterial whether the ice was smooth or rough, if, through the negligence of defendants, a dangerous condition of the sidewalk existed—a condition which the evidence clearly tends to prove.

Under practically identical circumstances, the court in *Tremblay* v. *Harmony Mills*, above, said: " 'At common law any act or obstruction which unnecessarily incommodes or impedes the lawful use of a highway by the public is a nuisance' (Ang. Highw., sec. 223) ; * * * that the jury could have found that the discharge of water and drippings from the leader in winter weather, when the water so discharged was liable to freeze and form ice, rendered the sidewalk dangerous, and constituted an obstruction, and that the defendant was negligent * * * seems to me quite plain. To exonerate the defendant from liability it must establish one of two propositions: First, that it had the lawful right to discharge the water which it had collected on the roof of its building upon the highway, regardless of the effect of that action upon the highway; or, second, that because the municipality was liable to anyone injured by the defective character of its highway, no action could be maintained against the abutting owner,

though his act may have created the danger or defect. I think that neither proposition can be sustained.''

But it is said that plaintiff's own proof shows contributory negligence, barring recovery. Counsel argue that an icy condition of the sidewalk requires special care on the part of pedestrians, citing 43 C. J. 1080, and that plaintiff's testimony shows that the place of the accident was reasonably lighted so that the condition could be observed. The evidence, however, is to the effect that, except for the narrow strip of ice at the corner, the sidewalks thereabouts were free from ice and snow. The plaintiff was a nonresident visiting the city, who had no knowledge of the existing condition, and the condition was not so apparent but that others had slipped and fallen on the strip of ice. We also have here the ''slanting'' condition mentioned in *O'Donnell* v. *City of Butte,* above, which, while making the sidewalk more dangerous, would not be particularly noticeable.

Here there was no such showing of contributory negligence as to warrant taking the case from the jury. As said in *Mc-Cabe* v. *City of Butte,* 46 Mont. 65, 125 Pac. 133, 135, the plaintiff ''was traveling along the walk in the ordinary way; * * * having no knowledge of the existence of the defect, she was not bound to make inspection in order to ascertain the existing condition.''

It is not apparent from the evidence that a person walking on the sidewalk in question, free, as it was, from snow and ice, would have any reason to apprehend that it would be icy at the corner of the building. ''Negligence is not imputable to the plaintiff when under the surrounding circumstances she had no reason to apprehend danger.'' (*Neilson* v. *Missoula Creamery Co.,* 59 Mont. 270, 196 Pac. 357, 359.)

The court erred in directing a verdict for the defendants. The judgment is reversed and the cause remanded to the district court of Missoula county for a new trial.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.